UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:                                                                      Chapter 11

975 Walton Bronx LLC,                                            Case No. 21-40487 (JMM)

                                    Debtor.
-----------------------------------------------------------x

## DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

975 Walton Bronx LLC (the "Debtor") hereby proposes the following Chapter 11 plan of reorganization (the "Plan") pursuant to §1121(a) and other provisions of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## OVERVIEW

The Debtor and its Current Investors remain committed to retaining ownership of the Debtor's Property, as defined below, and are filing this Plan to restructure the underlying mortgage debt and pay other creditors. The Debtor's preferred treatment is to reverse the acceleration of the mortgage debt and reinstate the mortgage loan through a cure and reinstatement thereof in accordance with 11 U.S.C. §§ 1124(2) and 1123(d). The mortgage carries a principal balance of $21,667,046.25 (the "Mortgage") and is currently held by Walton Improvement Group LLC (the "Lender") and secures Debtor's multi-family residential apartment building located at 975 Walton Avenue, Bronx, New York (the "Property"), containing approximately 182 residential apartments and five (5) commercial stores.

The Debtor's proposed cure and reinstatement of the Mortgage will likely be challenged by the Lender in connection with proceedings to confirm the Plan, although the Debtor remains confident that it can establish all of the required elements under 11 U.S.C. §1124(2). However,

should the Debtor be unable to effectuate a cure and reinstatement of the Mortgage, the Debtor will then seek, as an alternate back-up treatment for the Lender's claim, to pursue a refinancing of the Property. Alternatively, if grounds permit, the Debtor reserves the right to pay the allowed Mortgage claim of the Lender in full based on deferred cash payments as permitted under 11 U.S.C. §1129(b)(2)(A)(i), utilizing a cramdown post-confirmation interest rate under the principles outlined by the Supreme Court in *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S. Ct. 1951 (2004), and recognized in this Circuit under the precepts of *Matter of MPM Silicones, L.L.C.*, 874 F.3d 787 (2d Cir. 2017). Under any scenario, however, the Mortgage will be properly addressed so as to comply with the provisions of the Bankruptcy Code.

The Plan also provides for a separate distribution relating to the pre-petition judgment claim of Thor 975 Walton Avenue LLC ("Thor 975") in the sum of approximately $2.6 million. Since the value of the Property remains in flux following the Covid-19 pandemic, there is an open question as to whether the judgment claim is undersecured (in whole or in part), and, therefore, Thor 975 is being separately classified. The third class of creditors consists of the Debtor's pre-petition vendors and service providers, which will be eligible to receive a fifteen (15%) percent dividend to be paid in quarterly installments over a period of one (1) year from the Effective Date of the Plan.

## ARTICLE I

### DEFINITIONS

All capitalized terms used herein shall have the meanings set forth below.

1.1. "**Administrative Expense Claim**" means a Claim for the costs and expenses of administering the Chapter 11 case allowed under §§ 503(b) and 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of maintaining and preserving the Debtor's property; and (b) compensation for the Debtor's legal counsel and professional advisors (the "Professionals") as allowed by the Bankruptcy Court.

1.2. "**Allowed Claim**" means a Claim timely filed before the Bar Date or which was scheduled by the Debtor without being designated as contingent, unliquidated or disputed, and in either case, a claim (a) as to which no objection has been filed within the time fixed by the Bankruptcy Court; (b) as to which any objection has been settled, waived, withdrawn or denied by a Final Order; or (c) that is Allowed (i) by Final Order; or (ii) by an agreement between the creditor and the Debtor.

1.3. "**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District of New York.

1.4. "**Bankruptcy Schedules**" means the schedules of assets and liabilities, lists of executory contracts and unexpired leases, statements of financial affairs, and related information filed by the Debtor pursuant to Bankruptcy Rule 1007, as same may be amended or supplemented.

1.5. "**Bar Date**" means May 31, 2021, as the last date set by the Bankruptcy Court to file Claim against the Debtor.

1.6. "**Claim**" means a claim against the Debtor as defined in Bankruptcy Code § 101(5).

1.7. "**Claim Objection Deadline**" shall mean thirty (30) days after the Effective Date of the Plan.

1.8. "**Confirmation**" means approval of the Plan by the Bankruptcy Court.

1.9. "**Confirmation Hearing**" means the hearing or hearings before the Bankruptcy Court to consider approval of the Plan.

1.10. "**Confirmation Order**" means the order of the Bankruptcy Court approving the Plan pursuant to Bankruptcy Code § 1129.

1.11. "**Consolidated Note**" means that certain Consolidated Promissory Note between the Debtor as borrower and Investors Bank as lender dated April 1, 2015 in the original principal amount of $22,500,000 (since reduced).

1.12. "**Creditor**" means the holder of a Claim against the Debtor.

1.13. "**Current Investors**" means CT CMF Holdings, JLM Partners, Maye Ocean LLC, Global West LLC, Erica Goodman, ZF Capital Holdings LLC, SJJJ Inc., BSDS Investments, The Trust of Abraham Jeremias, The Trust of Chaya Jeremias, and Eliezer Jeremias.

1.14. "**Disbursing Agent**" means Goldberg Weprin Finkel Goldstein LLP for purposes of effectuating the initial distributions provided hereunder.

1.15. "**Disputed Claim**" means: (a) any Claim that is listed in the Debtor's schedules as being disputed, contingent or unliquidated with respect to which no Proof of Claim has been timely filed; and (b) any Claim with respect to which an objection to the allowance thereof, in whole or in part, has been interposed prior to the Claims Objection Deadline, and no final order has been entered resolving such objection.

1.16. "**Effective Date**" means the first business day after the Confirmation Order becomes a Final Order or January 2, 2022.

1.17. "**Final Order**" means an order of the Bankruptcy Court that has not been reversed, stayed, modified, or amended and as to which the time to appeal has expired, or if any appeal, has been sought, the order of the Bankruptcy Court has been affirmed by the highest court to which the order was appealed from and the time to take any further appeal has expired.

1.18. "**Mortgage**" means that certain Mortgage Consolidation, Extension and Modification Agreement between the Debtor as borrower and Investors Bank as lender dated April 1, 2015 recorded on May 4, 2015 in the Office of the City Register of the City of New York under CRFN 2015000148329 (the "CEMA"); and Mortgage and Security Agreement dated April 1, 2015 recorded as an exhibit to the CEMA, securing the Consolidated Note, all as assigned to the Lender pursuant to that certain: (i) Assignment of Mortgage dated October 30, 2020 between Investors Bank and the Lender recorded on November 9, 2020 in the Office of the City Register of the City of New York under CRFN 202000031653, and (ii) Transfer and Assignment of Note, Lien and Other Documents dated October 30, 2020 between Investors Bank and the Lender recorded on November 9, 2020 in the Office of the City Register of the City of New York under CRFN 2020000311655.

1.19. "**New Value Contribution**" means the capital contributions to be made by the Current Investors and majority members of the Debtor to assist with the funding of the Debtor's obligations under the Plan, including payment of the Cure, and the other cash distributions provided hereunder.

1.20. "**Petition Date**" means February 25, 2021, the date on which the voluntary petition commencing this Chapter 11 case was filed.

1.21. "**Priority Tax Claim**" means any Claims of a federal, state or local taxing authority for real estate taxes or related charges including the claims of the New York City Water Board.

1.22. "**Reorganized Debtor**" means the Debtor following confirmation of the Plan.

1.23. "**Secured Claim**" means a Claim secured by a lien, mortgage or security interest on the Property.

1.24. "**Unsecured Claim**" means all allowed general unsecured claim arising prior to the Petition Date not entitled to priority in bankruptcy or otherwise secured by Property of the Debtor.

1.25. "**Unsecured Creditor**" means the holder of an Unsecured Claim.

1.26. "**U.S. Trustee Fees**" means fees payable pursuant to 28 U.S.C. § 1930, together with any statutory interest.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTEREST

The Claims and Interests as defined by the Plan hereunder are classified as follows:

**Class 1** – Allowed Secured Claim of the Lender.

**Class 2** – Allowed Judgment Claim of Thor 975.

**Class 3** – Allowed General Unsecured Claims.

**Class 4** – The Equity Interests of the Debtor and Reorganized Debtor.

## ARTICLE III

## UNCLASSIFIED CLAIMS

Pursuant to Section 1123(a) of the Bankruptcy Code, the Plan does not classify Administrative Claims, Priority Tax Claims or U.S. Trustee Fees, all of which shall be paid in full as required by 11 U.S.C. §1129(a)(9).

3.1. **Administrative Expenses**. Administrative Expenses consist of Professional Fees and any unpaid fees, costs and expenses incurred by the Debtor in maintaining the Property during the Chapter 11 case. To the extent that any Administrative Expenses has not been paid prior to Closing, each holder of an Administrative Claim shall be paid by the Debtor on the Effective Date.

3.2. **Administrative Expense Bar Date**. A date establishing an Administrative Expense Bar Date shall be included as part of the Confirmation Order, which shall be served

upon all creditors and other parties-in-interest. All requests for payment of Administrative Expenses that accrued on or before the Confirmation Date must be filed with the Bankruptcy Court by the Administrative Expense Bar Date, except for Professional Fee Claims. Any holder of an Administrative Expense which fails to file a timely request for the payment of an Administrative Expense shall be forever barred, estopped and enjoined from asserting such Administrative Expense against the Debtor and Reorganized Debtor.

3.3. **Professional Fee Claims**. All requests for allowance of Professional Fee Claims shall be filed no later than thirty (30) days after the Effective Date in accordance with 11 U.S.C. §330. After notice and a hearing, the allowed amounts of such Professional Fee Claims shall be paid by the Disbursing Agent upon entry of an appropriate Order of the Bankruptcy Court awarding the same.

3.4. **Priority Tax Claims**. All outstanding real estate tax claims and related charges shall be treated as Allowed Priority Tax Claims for purposes of the Plan, and such Priority Tax Claims shall be paid in full on the Effective Date.

3.5. **U.S. Trustee Fees**. To the extent not otherwise paid, the Debtor shall pay all accrued U.S. Trustee Fees, together with any interest thereon, until the Chapter 11 case is closed by entry of a Final Decree.

## ARTICLE IV

## CLASSIFICATION AND TREATMENT OF CLAIMS

The Plan classifies Claims and Interests against the Debtor consistent with the applicable provisions of the Bankruptcy Code.

4.1. **Summary**. The categories listed below classify Claims and Equity Interests against the Debtor for all purposes, including voting, confirmation and distribution pursuant to Sections 1122 and 1123(a)(l) of the Bankruptcy Code, as summarized below:

| Class | Designation | Impaired | Entitled to Vote |
|---|---|---|---|
| Class 1 | Lender | No | No |
| Class 2 | Thor 975 | Yes | Yes |
| Class 3 | General Unsecured Claims | Yes | Yes |
| Class 4 | Equity Interests | No | N/A |

### Class 1: The Secured Claim of the Lender

4.2. **Classification** - Class 1 consists of the allowed secured claim of Lender.

**Background**. The overriding goal of this Plan is to restructure the Mortgage in a manner that preserves the Debtor's ability to retain the Property. The dynamics of the Chapter 11 case are such that the Lender acquired the Mortgage from Investors Bank on October 31, 2020 with the intent of leveraging the debt to obtain ownership of the Property. The Debtor countered with the filing of this Chapter 11 case to utilize bankruptcy to address the claim of the Lender and preserve ownership of the Property for itself. The ultimate disposition of the Property will be determined in connection with the confirmation process.

**Treatment** – The Lender shall receive treatment of its allowed Mortgage claim in accordance with the provisions of 11 U.S.C. §1124(2). To that end, the pre-petition mortgage defaults (accruing since May 1, 2020 through the Petition Date) shall be cured; the prior acceleration of the Mortgage shall be deemed reversed; and the original maturity date of April 1, 2027 shall be reinstated. The Debtor computes that the pre-petition interest arrears due under the Mortgage and Consolidated Note amounts to $1,574,810 (including pre-petition default interest for the period starting with acceleration of the Mortgage on August 31, 2020 up to and including

the Petition Date) (hereinafter, the "<u>Cure</u>")[1]. Upon receipt and payment of the Cure (which shall be made on the Effective Date), the Mortgage and Consolidated Note shall become immediately enforceable against the Debtor and the Reorganized Debtor in accordance with their respective stated terms, including (i) reinstatement of the original maturity date on April 1, 2027; (ii) continued payment of interest at a rate of 3.5% per annum, subject to adjustment and recalculation on May 1, 2022; and (iii) the continuation of the Lender's eligibility to receive pre-payment fees for periods after December 31, 2022. The Debtor shall resume regular payments of principal and interest pursuant to the Consolidated Note beginning thirty (30) days after the Effective Date and continuing until maturity on April 1, 2027.

**Alternate Treatment:** Should a cure and reinstatement of the Mortgage not be permitted by the Bankruptcy Court, the Debtor shall then proceed with a refinancing of the Property (the "<u>Refinancing</u>") to satisfy the Lender's allowed Class 1 Claim. The Debtor shall make a decision as to the potential pursuit of Refinancing within ten (10) days after a determination is made by the Bankruptcy Court on the proposed cure and reinstatement of the Mortgage. The Refinancing shall be completed within a period of one hundred twenty (120) days after conclusion of the Confirmation Hearing, but no earlier than April 1, 2022, so as to eliminate the imposition of pre-payment fees.[2] The Debtor shall provide notice of the relevant terms and conditions of the Refinancing via a supplement to the Plan. As applicable, the Debtor shall also separately move for Bankruptcy Court approval of the Refinancing pursuant to 11 U.S.C. §364.

---

[1] The Debtor reserves the right to challenge the Lender's right to charge default interest during the pandemic under various theories, recognizing that if default interest is allowed pre-petition by the Bankruptcy Court, it must be paid as part of the Cure.

[2] Interestingly, pursuant to the terms of the Consolidated Note, there are no pre-payment fees due in year seven (2022), which presumably begins seven years from execution on April 1, 2022, if not earlier.

**Till Cramdown:** Alternatively, the Debtor also reserves the right, depending on certain variables, to implement a so-called "Till" post-confirmation cramdown interest rate, and pay the Lender's Allowed Claim in deferred cash payments over a term of ten (10) years, with interest rate of 3.25% plus 100 basis points. Also, as part of a potential cramdown, the Lender will be afforded the option (the "Equity Participation Option") to participate in the Reorganized Debtor as an equity holder in consideration for contributing to the funding of the Plan on a *pro rata* basis with the Current Investors. As an equity holder, the Lender shall be eligible to share in future profits and distributions after the Current Investors recoup their original investments. The specific terms of the Equity Participation Option shall be developed as circumstances dictate.

**Voting** – To the extent that the Mortgage is cured and reinstated, or otherwise paid in full based upon a Refinancing, the Allowed Class 1 Claim of the Lender is unimpaired and not entitled to vote. To the extent that the Debtor pursues a cramdown utilizing a Till post-confirmation interest rate over a term of ten (10) years, the claim of the Lender is then impaired and eligible to vote.

### Class 2: The Judgment Claim of Thor 975

4.3. **Classification** - Class 2 consists of the judgment claim of Thor 975 in the amount of $2,600,290.

**Context of Treatment** – Thor 975 shall receive a cash dividend in the sum of $500,000 to be paid by the Debtor on the Effective Date in full settlement, satisfaction and release of its claim and judgment against the Debtor and the Property.

**Voting** – Class 2 is impaired and entitled to vote on the Plan.

### Class 3: Unsecured Claims

4.4. **Classification** – Class 3 consists of the allowed Unsecured Claims, including all pre-petition vendors and service providers.

**Treatment** – Each holder of an Allowed Class 3 Unsecured Claim shall receive a fifteen (15%) percent dividend to be paid in equal quarterly installments over a period of one (1) year from the Effective Date of the Plan.

**Voting** – Class 3 is impaired under the Plan and eligible to vote.

### Class 4: Equity Holders

4.5. **Classification** – Class 4 consists of the membership interests of the Debtor's equity holders.

**Treatment** – All existing pre-petition Equity Interests in the Debtor shall be canceled in favor of reconstituting and recapitalizing the membership interest of the Reorganized Debtor to be held by the Current Investors in proportion to their respective New Value Contributions. Benzion Kohn or his affiliate shall not, under any circumstances, be a member of the Reorganized Debtor and all of his interests shall be cancelled.

**Voting** - Class 4 Equity Interests are not eligible to vote because of their insider status.

### ARTICLE V

### MEANS FOR IMPLEMENTATION OF THE PLAN

5.1. **Plan Funding**. The Plan shall be funded through a combination of access to existing cash reserves, plus the New Value Contributions of the Debtor's Current Investors, amounting to the projected sum of $2,733,762, to fund payments itemized as follows:

|   |   |   |   |
|---|---|---|---|
| a. | Administrative Expense Claims | | $250,000 |
| b. | Real Estate Taxes and Water | | $408,952 |
| c. | Cure to Lender | | $1,574,810 |
| d. | Cash dividend to Thor 975 | | $500,000 |
| Total | | | $2,733,762 |

5.2. **Vesting of Assets**.

(a) **The Property**. On the Effective Date, the Property and any other assets of the Debtor shall revest in the Reorganized Debtor subject only to the reinstated Mortgage held by the Class 1 Lender.

(b) **Preservation of Causes of Action.** Any rights, claims, causes of action, damages and remedies in favor of the Debtor's estate relating to any pre-petition distribution of funds or other business transactions (including all avoidance claims under the Bankruptcy Code or state law) shall be vested in the Reorganized Debtor for prosecution by a creditor trust to be established as necessary and appropriate after the Effective Date of the Plan (the "Creditor Trust"). The Creditor Trust shall be memorialized by a separate trust document to be filed as a supplement to the Plan. The Debtor shall designate a disinterested person to act as the trustee for the Creditor Trust and the sum of $10,000 shall be set aside by the Debtor to initially fund the Creditor Trust. Any monetary recoveries obtained by or on behalf of the Creditor Trust (after payment of legal fees and expenses) shall be applied to pay-down the Mortgage and/or fund a supplemental distribution to 875 Thor up to the sum of $500,000.

## ARTICLE VI

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1. **Assumption of Leases**. The Debtor's existing commercial and residential leases with the tenants are hereby deemed assumed pursuant to 11 U.S.C. §365, with the cure of any

defaults relating to the condition of the apartments or remediation of outstanding violations to be made by the Debtor and Reorganized Debtor in the regular course of business.

6.2. **Ratification of the Assumed CBA**.  Pursuant to notice dated September 3, 2021, the Debtor has already moved to assume its collective bargaining agreement with 32BJ SEUI, as modified, pursuant to 11 U.S.C. §§365 and 1113. The modified CBA was approved by the Court and the assumption of the modified CBA is ratified for purposes of the Plan and shall be binding on the Reorganized Debtor.

## ARTICLE VII

## RETENTION OF JURISDICTION

7.1. **Retention of Jurisdiction**. The Bankruptcy Court shall retain jurisdiction to consider the following matters after Confirmation of the Plan:

(a) To enforce, implement, interpret or modify the Plan under applicable provisions of the Bankruptcy Code;

(b) To ensure that the Plan is fully consummated, and to enter a Final Decree;

(c) To allow, disallow, determine, liquidate or classify any Claims and Administrative Expenses, including any dispute relating to the cure amount necessary to reinstate the Mortgage.

(d) To consider applications filed by Professionals for final compensation and reimbursement of expenses; and

(e) To resolve any motions, adversary proceedings or applications pending on the Effective Date.

# ARTICLE VIII

## GENERAL PROVISIONS

8.1. **Headings**. The headings in the Plan are for reference purposes only.

8.2. **Contents of Confirmation Order**. The Confirmation Order may contain various provisions as may be necessary to modify, implement or enforce the Plan.

8.3. **No payment of Disputed Claims**. The Plan contemplates the payment of Allowed Claims only. No distributions shall be made on account of any Disputed Claim(s), until such Disputed Claim(s), or any part thereof, becomes an Allowed Claim in whole or in part.

8.4. **Modification of the Plan.** The Plan may be altered, amended or modified by the Debtor at any time before substantial consummation thereof in accordance with the Bankruptcy Code.

8.5. **Quarterly Fees**. All fees payable pursuant to 28 U.S.C. § 1930, together with any applicable interest thereon, shall be paid by the Debtor until the earlier of the conversion or dismissal of this case under 11 U.S.C. §1112 of the Bankruptcy Code, or the closing of the Chapter 11 case under 11 U.S.C. §350(a).

8.6. **Post-Confirmation Reports**. The Debtor shall file quarterly status reports until the Chapter 11 case is closed.

8.7. **<u>Closing the Case</u>**.  Within fourteen (14) days following the full and final administration of the Chapter 11 case, the Debtor shall file, on notice to the United States Trustee, an application and proposed Order for a Final Decree.

Dated: New York, NY
         September 23, 2021

| | |
|---|---|
| 975 Walton Bronx LLC | Goldberg Weprin Finkel Goldstein LLP<br>1501 Broadway, 22nd Floor<br>New York, NY 10036 |
| By:   /s/ David L. Smith, Manager | By:   /s/ Kevin J. Nash, Esq. |

14