> **THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT.**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------------- x

In re

975 Walton Bronx LLC,

                    Debtor.

------------------------------------------------------------------- x

Chapter 11

Case No. 21-40487 (JMM)

### DISCLOSURE STATEMENT FOR THE WALTON IMPROVEMENT GROUP LLC'S PLAN OF LIQUIDATION FOR THE DEBTOR

THIS DISCLOSURE STATEMENT IS BEING SUBMITTED TO ALL CLAIMANTS AND PARTIES IN INTEREST OF THE CHAPTER 11 BANKRUPTCY ESTATE OF 975 WALTON BRONX LLC (THE "DEBTOR"). THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY AFFECT CLAIMANTS' DECISIONS TO ACCEPT OR REJECT THE WALTON IMPROVEMENT GROUP LLC'S PLAN OF LIQUIDATION FOR THE DEBTOR.

ALL CLAIMANTS ARE URGED TO CAREFULLY READ THIS DISCLOSURE STATEMENT.  ALL CAPITALIZED TERMS NOT DEFINED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE SAME MEANINGS ASCRIBED TO THEM AS CAPITALIZED TERMS CONTAINED IN THE WALTON IMPROVEMENT GROUP LLC'S PLAN OF LIQUIDATION FOR THE DEBTOR ANNEXED TO THIS DISCLOSURE STATEMENT AS EXHIBIT A (THE "LENDER'S PLAN").

THIS DISCLOSURE STATEMENT FORMS PART OF THE WALTON IMPROVEMENT GROUP LLC'S (THE "LENDER'S") SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. THIS DISCLOSURE STATEMENT WAS APPROVED BY ORDER OF THE BANKRUPTCY COURT DATED [_____ __, 2022].

COURT APPROVAL OF THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE COURT APPROVAL OF THE TERMS OF THE PLAN.

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     GENERAL INFORMATION REGARDING THE DEBTOR .........................................4

    A.      The Property .........................................................................................4

    B.      The Debtor's Ownership Structure ........................................................5

    C.      Events Leading to the Chapter 11 Case ................................................6

    D.      Claims Against and Interests in the Debtor ...........................................6

III.    SIGNIFICANT EVENTS DURING THIS CHAPTER 11 CASE ....................................6

    A.      Events Leading up to the Bankruptcy ...................................................6

    B.      Cash Collateral ....................................................................................7

    C.      The Union Dispute ...............................................................................7

    D.      Exclusivity ...........................................................................................7

    E.      The Debtor's Plan ................................................................................7

IV.     SUMMARY OF THE LENDER'S PLAN ..................................................................8

    A.      Classification and Treatment Under the Lender's Plan ..........................8

    B.      Administrative Expense Claims, Priority Tax Claims, Professional Fee Claims, and U.S. Trustee Fees .....................................................................................12

    C.      Distribution and Means for Implementation of the Lender's Plan .......................13

    D.      Treatment of Executory Contracts ......................................................13

    E.      Preferences and Other Causes of Action .............................................14

    F.      Exemption from Transfer Taxes ..........................................................14

V.      LIQUIDATION ANALYSIS ..................................................................................15

VI.     RISK FACTORS TO BE CONSIDERED ..................................................................16

VII.    CERTAIN TAX CONSEQUENCES .........................................................................16

VIII.   RETENTION OF JURISDICTION ..........................................................................17

IX.    VOTING INSTRUCTIONS AND PROCEDURES ........................................................18

X.    NOTICES..................................................................................................................19

XI.    CONCLUSION ...........................................................................................................20

# I.   **INTRODUCTION**

The Lender submits this Disclosure Statement for the Walton Improvement Group LLC's Plan of Liquidation for the Debtor (the "Disclosure Statement") in connection with the solicitation of acceptances for the Lender's Plan under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). A copy of the Lender's Plan is attached hereto as Exhibit A.  All Claimants are urged to review the Lender's Plan, in addition to reviewing this Disclosure Statement. All capitalized terms used but not defined in the Disclosure Statement shall have the meanings ascribed to them in the Lender's Plan. The terms of the Lender's Plan shall govern in the event of any inconsistency with the summaries of the Lender's Plan set forth in this Disclosure Statement.

On February 25, 2021 (the "Petition Date"), the Debtor commenced the above-captioned chapter 11 case (the "Chapter 11 Case") by filing a voluntary petition for relief in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its businesses and manage its property as a debtor and debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no party has requested the appointment of a trustee or examiner in this Chapter 11 Case, and no committees have been appointed.

On November 22, 2021, the Debtor filed *Debtor's Amended Chapter 11 Plan of Reorganization* [ECF No. 57] (the "Debtor's Plan").  Creditors in this Chapter 11 Case fare better under the Lender's Plan and accordingly, the Lender urges you to vote to accept the Lender's Plan. By way of comparison, the table below illustrates that the Lender's Plan provides more favorable treatment to all creditors:

| Claim | Treatment Under the Lender's Plan | Treatment Under the Debtor's Plan |
|---|---|---|
| Thor's Claim | Thor will receive $550,000 | Thor will receive $500,000 |
| Unsecured Claims | Unsecured Claimants (excluding the Sookdeo Claim) will receive a one-time, 20% distribution promptly following the Effective Date | Unsecured Claimants (potentially including the unsecured portion of the Lender's Claim) will receive a 15% dividend to be paid in equal quarterly installments over a period of one year from the effective date of the Debtor's Plan. |

More particularly, the Lender's Plan's key elements are as follows:

- On the Effective Date, on account of and in partial satisfaction of the Allowed Lender's Claim, the Debtor shall transfer title to the Property and the Assets, pursuant to transfer, conveyance and assignment documents in favor of the Lender in a form satisfactory to the Lender (the "Assignment Documents"), directly to the Lender (or its designee), free and clear of all Claims, Liens, charges, interests and encumbrances other than the

Permitted Exceptions, the New Mortgage, and governmental orders and violations of record applicable to the Property and in effect as of the Effective Date (collectively, the "Property Transfer").

- On the Distribution Date, the Lender shall pay the Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims in full in Cash. Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims shall also receive pre-petition and post-petition interest at the statutory rate.

- On account of the Allowed Thor Claim, Thor shall receive a Cash payment from the Lender on the Distribution Date in the sum of $550,000 in full settlement, satisfaction, and release of the Thor Claim and any accompanying Lien.

- In full satisfaction, settlement, release and discharge of such Claims, Allowed Unsecured Claims (except the Sookdeo Claim) shall receive a Cash payment equal to twenty percent (20%) of the Allowed amount of such Claims to be paid by the Lender on the Distribution Date, without any pre-petition or post-petition interest.

- In full satisfaction, settlement, release and discharge of the Sookdeo Claim, Shinelle Sookdeo shall receive an amount equal to the lesser of (a) the Allowed Sookdeo Claim and (b) the amount of insurance (net of any deductible) available to satisfy the Allowed Sookdeo Claim, which amount shall be sourced and paid exclusively by the Debtor's liability insurer.

- The Debtor is assuming the Tenant Leases and assigning them to the Lender (or its designee). The Lender (or its designee) is assuming all obligations of the Debtor as landlord under all of the assigned Tenant Leases from and after the Effective Date.

The Lender believes that its Lender's Plan is confirmable and is in the best interests of all Claimants, who will receive a substantial Cash recovery on their Allowed Claims. In the Lender's view, because the amount of the Lender's Claim exceeds the value of the Property, the treatment of the Thor Claim and Unsecured Claims under the Plan provides a greater and more certain recovery than that which is likely to be achieved under other reorganization or liquidation alternatives, including, but not limited to, the reorganization contemplated by the Debtor's Plan (as defined below). The Lender believes that Thor and Unsecured Claims would not receive any recovery in connection with a liquidation of the Debtor's assets. Thor and holders of Unsecured Claims will receive a greater, more timely, and more certain recovery under the Lender's Plan than under the Debtor's Plan.

**THE LENDER URGES YOU TO VOTE TO ACCEPT THE LENDER'S PLAN. THE LENDER'S GOAL IS FOR ALL CREDITOR CLASSES TO ACCEPT THE LENDER'S PLAN. IF ALL CREDITOR CLASSES DO NOT ACCEPT THE LENDER'S PLAN, THE LENDER MAY SEEK TO CONFIRM THE LENDER'S PLAN OVER THE OBJECTION OF ANY CLASS UNDER SECTION 1129(b) OF THE BANKRUPTCY CODE AS MAY BE NECESSARY TO EFFECT CONFIRMATION OF THE LENDER'S PLAN.**

This Disclosure Statement is not intended to replace a review and analysis of the Lender's Plan.  Rather, it is submitted as a review of the Lender's Plan in an effort to explain the Plan.  To the extent a creditor has any questions, the Lender urges you to contact Lender's counsel, Benjamin Mintz, at (212) 836-8505 or Justin Imperato, at (212) 836-7164, and every effort will be made to assist you. You should also consider consulting your own lawyer to obtain more specific advice on how the Lender's Plan may affect you and what is the best course of action for you.

On _____ __, 2022, after notice and a hearing, the Bankruptcy Court entered an order approving this Disclosure Statement as containing information of a kind and in sufficient detail in light of the nature and history of the Debtor and the condition of the Debtor's books and records, to enable Claimants whose votes are being solicited to make an informed judgment whether to accept or reject the Lender's Plan.

**EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT, NO REPRESENTATION CONCERNING THE DEBTOR, ITS ASSETS, ITS PAST OR FUTURE OPERATIONS, OR THE LENDER'S PLAN ARE AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE LENDER'S PLAN.  CLAIMANTS SHOULD READ THIS DISCLOSURE STATEMENT, THE LENDER'S PLAN, AND THE INSTRUCTIONS ACCOMPANYING THE VOTING BALLOTS IN THEIR ENTIRETY PRIOR TO VOTING ON THE LENDER'S PLAN IN THE CHAPTER 11 CASE. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER SUCH DATE. ALL CLAIMANTS SHOULD CAREFULLY READ THE "RISK FACTORS" SECTION OF THIS DISCLOSURE STATEMENT LOCATED IN ARTICLE VI BEFORE VOTING TO ACCEPT OR REJECT THE LENDER'S PLAN. NO SOLICITATION OF VOTES IN RESPECT OF THE LENDER'S PLAN MAY BE MADE EXCEPT PURSUANT TO THIS DISCLOSURE STATEMENT.**

This Disclosure Statement has been prepared in accordance with section 1125 of the Bankruptcy Code and Rule 3016 of the Federal Rules of Bankruptcy Procedure and not necessarily in accordance with other applicable laws. Persons or entities trading in or otherwise purchasing, selling, or transferring Claims or Interests of the Debtor should evaluate this Disclosure Statement and the Lender's Plan in light of the purposes for which they were prepared. The information in this Disclosure Statement is being provided solely for purposes of voting to accept or reject the Lender's Plan.  It is the Lender's position that nothing in this Disclosure Statement may be used by any entity for any other purpose as to contested matters, existing litigation involving, or possible additional litigation to be brought by, or against, the Debtor and other actions or threatened actions. This Disclosure Statement, the Lender's Plan, and any related documents thereto shall not constitute or be construed as an admission of any fact or liability, a stipulation, or a waiver, but rather as statements made without prejudice solely for settlement purposes, with full reservation of rights, and are not to be used for any litigation purpose whatsoever by any person, party, or entity. As such, it is the Lender's view that this Disclosure Statement, the Lender's Plan and any related documents thereto shall not be admissible in any non-bankruptcy proceeding involving the Debtor or any other party in interest, nor shall this Disclosure Statement, the Lender's Plan and

any related documents thereto be construed to be conclusive advice on the tax, securities, financial, or other effects of the Lender's Plan as to holders of Claims against, or Interests in, the Debtor.

**THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT CONCERNING THE DEBTOR'S FINANCIAL CONDITION IS BEING SUPPLIED BY THE LENDER BASED ON THE INFORMATION PROVIDED IN THE *DEBTOR'S AMENDED DISCLOSURE STATEMENT* [ECF No. 58], THE DEBTOR'S SCHEDULES AND STATEMENT OF FINANCIAL AFFAIRS [ECF NOS. 1 AND 23], THE DEBTOR'S MONTHLY OPERATING REPORTS, AND THE DEBTOR'S BOOKS AND RECORDS MADE AVAILABLE TO THE LENDER. BASED UPON THE INFORMATION MADE AVAILABLE, LENDER'S COUNSEL HAS NO INFORMATION TO INDICATE THAT THE INFORMATION DISCLOSED HEREIN IS INACCURATE. THE LENDER REASONABLY BELIEVES THAT THE INFORMATION CONTAINED HEREIN IS TRUE AND CORRECT. NEITHER THE LENDER NOR LENDER'S COUNSEL, HOWEVER, ARE ABLE TO STATE DEFINITIVELY THAT THERE IS NO INACCURACY HEREIN OR THAT FUTURE EVENTS MAY NOT RENDER THE INFORMATION CONTAINED HEREIN INACCURATE. TO THE EXTENT THAT SUCH INFORMATION IS DISCOVERED, THE LENDER SHALL MAKE SUPPLEMENTAL DISCLOSURES AS REQUIRED.**

After reviewing this Disclosure Statement, please indicate your vote to accept or to reject the Lender's Plan on the enclosed ballot and return the ballot: (i) by U.S. mail to Justin Imperato, 250 West 55th Street, New York, NY 10019; or (ii) by email to justin.imperato@arnoldporter.com so as to be actually received on or before __ _.m. on _____ __, 2022, prevailing Eastern Time. **LATE BALLOTS WILL NOT BE COUNTED.**

The Bankruptcy Court has entered an Order fixing _____ __, 2022 at __ _.m., at the United States Bankruptcy Court, 271-C Cadman Plaza East, Brooklyn, New York, 11201, as the date, time and place for the hearing on confirmation of the Lender's Plan and fixing _ p.m. on _____ __, 2022, prevailing Eastern Time, as the last date for the filing and serving of any objections to confirmation of the Lender's Plan. A copy of any objection to confirmation of the Lender's Plan must be filed with the Court, a copy delivered to Judge Jil Mazer-Marino's chambers by email at jmm_hearings@nysb.uscourts.gov, served on Lender's counsel by email at benjamin.mintz@arnoldporter.com and justin.imperato@arnoldporter.com, and a copy delivered to counsel for the U.S. Trustee by email at jeremy.s.sussman@usdoj.gov, and on counsel for the Debtor by email at kjnash@gwulaw.com before such date. **UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY FILED AND SERVED, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

## II.   GENERAL INFORMATION REGARDING THE DEBTOR

### A.   The Property

The Debtor owns a multifamily residential building on 975 Walton Avenue in the Bronx (the "Property"). The Property is improved by a mixed-use apartment building consisting of approximately 280,000 square feet, located in the immediate vicinity of Yankee Stadium. The apartment units, which range from one to three bedrooms, are relatively large and spacious, and

the Debtor operates close to full occupancy, although the residential units are subject to rent stabilization (with some rent-controlled units). Additionally, many of the Debtor's tenants receive federal rent subsidies. The most recent current rent roll for June 2022 reflects total monthly rents of approximately $253,000.

On April 1, 2015, in connection with the Debtor's acquisition of the Property, Investors Bank and the Debtor executed the Loan Documents.[1] On October 30, 2020, Investors Bank assigned the Loan Documents to the Lender. *See Stipulation and Consent Order (A) Authorizing Debtor's Use of Cash Collateral and (B) Providing Adequate Protection Therefore* ¶ E.2 [ECF No. 34] (the "Cash Collateral Stipulation") (providing that the Debtor stipulates, admits, and agrees that the Loan Documents were assigned to the Lender pursuant to the Transfer Documents (as defined in the Cash Collateral Stipulation)).

Pursuant to the Loan Documents, the Debtor's obligations to the Lender are in an amount not less than $25,458,110.80 and are secured by, among other things, the Property and a valid, perfected, and enforceable first priority lien on and security interest in and to substantially all assets of the Debtor, including, without limitation, the Property, the rents, receipts, profits, and other amounts arising from the lease, sale, or operation of the Property together with any proceeds thereof, contracts, equipment, general intangibles, goods, and instruments and such other assets and property as further described in the Loan Documents. *See* Cash Collateral Stipulation ¶ E.5 (providing that the Debtor stipulates, admits, and agrees that the Lender holds a valid, perfected, and enforceable first priority lien and security interest in and to, among other things, substantially all of the Debtor's assets).

In connection with the Debtor's request for confirmation of the Debtor's Plan, the Debtor submitted an appraisal from Property Valuation, Inc. that ascribes an $18.8 million "as is" value to the Property as of February 18, 2022 (the "Debtor's Appraisal"). The Debtor's Appraisal does not ascribe a prospective market value to the Property as of the maturity date of the loan. The Lender obtained its own independent appraisal of the Property from Bowery Valuation that ascribes a $17.7 million "as is" value to the Property as of February 28, 2022 and a prospective market value of $18.3 million for the Property as of the maturity date of the loan.

## B.    The Debtor's Ownership Structure

As of the date hereof, J Partners Group LLC ("J Partners") holds a 49.99% ownership interest in the Debtor and 15-21 Crooke LLC ("Crooke") holds a 50.01% interest. J Partners is the Debtor's managing member and has operational control of the Debtor. J Partners's principals include, but are not limited to, Aaron Jungreis, Steven Neuman, Israel Weinberger, Jonathan Weinberger, Eliezer Jeremias, Joel Weinberger, Moshe Greenzweig, Leslie Westreich, Jason Goodstein, Erica Goodstein, Jonathan Zauderer, William Neuman, Abraham Jeremias and Chaya Jeremias. Crooke's managing member and principal owner is Benzion Kohn.

---

[1] The Loan Documents include, but are not limited to, that certain Loan Agreement dated April 1, 2015 between the Debtor and Investors Bank (the "Loan Agreement").

### C.        Events Leading to the Chapter 11 Case

Prior to the Petition Date, the Debtor defaulted under the Loan Documents by failing to pay principal and interest installment payments and other amounts due under the Loan Documents (collectively, the "Payment Defaults") beginning in April 2020 and continuing monthly thereafter through the Petition Date. The Payment Defaults constituted Events of Default (as defined in the Loan Documents) under the Loan Documents. Further, the Debtor defaulted under the Loan Documents by failing to observe or perform numerous other material covenants and/or agreements under the Loan Documents (collectively, the "Covenant Defaults").

As a result of the Debtor's various Payment Defaults and Covenant Defaults, following acceleration of the loan, on February 23, 2021, the Lender commenced a commercial foreclosure action in the Supreme Court of the State of New York, County of Bronx. That action is currently stayed as a result of the Debtor's commencement of the Chapter 11 Case.

### D.        Claims Against and Interests in the Debtor

#### 1.        *The Lender's Claim*

The Lender's Claim is in an amount not less than  $25,458,110.80 as of the Petition Date.

#### 2.        *Thor's Claim*

Thor has a judgment claim against the Debtor in the amount of $2,600,290, which claim is secured by a junior lien on the Debtor's Property.  Thor's claim is junior to the Lender's Claim. Thor's claim arose out of a sale agreement between the Debtor and Thor, which agreement was breached by the Debtor.

#### 3.        *Other Claims*

Other significant prepetition claims against the Debtor's estate include, but are not limited to, (i) a $408,952.32 secured claim filed by the New York City Water Board for unpaid water charges (the "Water Board Claim"), (ii) approximately $305,000 of general unsecured claims for, among other things, vendor services, e.g., Con Edison, pest control, legal services, and (iii) a disputed $5,000,000 unsecured claim filed by Shinelle Sookdeo based on a personal injury lawsuit against the Debtor, and the Lender understands that such claim has been submitted by the Debtor to its insurance carrier for coverage.

## III.        SIGNIFICANT EVENTS DURING THIS CHAPTER 11 CASE

### A.        Events Leading up to the Bankruptcy

The Debtor used the COVID-19 pandemic opportunistically in an effort to try to pressure the Lender to renegotiate the terms of the Loan.  Despite having adequate rent collections and sufficient monies to pay its obligations, the Debtor elected to not pay debt service and defaulted under the Loan as of April 2020 and continued to withhold debt service through the Petition Date. At the same time, the Debtor made substantial transfers to the Debtor's Insiders including its owners and their affiliates of not less than $866,310.65 (the "Insider Transfers").  SOFA ¶ 4.1.1.

**B.     Cash Collateral**

The Cash Collateral Stipulation between the Debtor and the Lender was executed on May 6, 2021 and approved by the Court on June 4, 2021. Pursuant to the *Stipulation and Consent Order Extending Prior Stipulation and Consent Order for the Use of Cash Collateral* [ECF No. 140], the Cash Collateral Stipulation was extended through and including August 31, 2022, subject to further extension by agreement between the Debtor and Lender. On August 30, 2022, the Debtor and the Lender further extended the Cash Collateral Stipulation through and including October 31, 2022.

**C.     The Union Dispute**

During this Chapter 11 Case, a dispute arose (the "Union Dispute") between the Debtor's union, 32BJ SEIU ("32BJ") and the Debtor over the Debtor's use of temporary and part-time employees. During the COVID-19 pandemic, two (2) 32BJ union employees executed severance agreements and voluntarily terminated their employment with the Debtor. Thereafter, 32BJ objected to the Debtor's hiring of non-union replacements, even though 32BJ approved the severance agreements. The Union Dispute went to formal arbitration proceedings commenced by 32BJ, whereupon the Debtor negotiated a settlement with 32BJ to ensure labor peace. The Debtor signed a stipulation with 32BJ that reduces the number of permanent 32BJ employees at the Property from four to three, sets parameters for the Debtor's use of temporary and part-time non-union workers, and provides for the payment of back wages aggregating approximately $5,400 to the two 32BJ employees that voluntarily terminated their employment with the Debtor.

**D.     Exclusivity**

Pursuant to Bankruptcy Code section 1121(d), the Debtor is afforded an exclusive period of 120 days and 180 days during which only the Debtor may file and solicit votes on, respectively, a plan (subject to extensions of up to 18 months and 20 months, respectively, from the petition date). Pursuant to Bankruptcy Code sections 1121(c)(3), (d), the Court's order approving the Debtor's disclosure statement [ECF No. 65], and the Court's Order Denying Confirmation (as defined below) [ECF No. 161], the Debtor's exclusive period to file a plan expired on August 25, 2022 and its exclusive period to solicit acceptances from creditors on such plan expired on, at the latest, October 6, 2022 (i.e., the date the Court endorsed the Order Denying Confirmation).

**E.     The Debtor's Plan**

Commonly referred to as a toggle plan, the Debtor's Plan proposes three (3) alternative paths by which the Debtor will emerge from this Chapter 11 Case. The Debtor's preferred treatment of the Lender's Claim in was to cure the various Payment Defaults and Covenant Defaults and reinstate the Loan Documents under Bankruptcy Code section 1124(2) (the "Cure and Reinstatement Option").

*1.     The Debtor's Plan's Cure and Reinstatement Option Failed*

On April 4, 2022, the Court conducted a hearing solely to consider the legal arguments raised by the Debtor and the Lender in respect of the Debtor's Plan's Cure and Reinstatement Option. On April 7, 2022, the Court held, among other things, that the Debtor could not cure its

continuing, uncured breach of the change of control covenants in the Loan Agreement (the "Change of Control Covenants") due to Crooke's transfer in January 2018 of its ownership and control of the Debtor to J Partners and the further ownership transfer contemplated by the Debtor's Plan, but nevertheless the Debtor might be able to reinstate the debt due to the Lender, provided the Debtor presents sufficient factual evidence and testimony which demonstrates, among other things, that (i) the Lender has not suffered actual damages as a result of the Debtor's continuing, uncured breach of the change of Control Covenants, (ii) the Debtor's breach of the Change of Control Covenants has not impaired the Lender's security, that is, the collateral securing the Debtor's debt to the Lender, i.e., the Property, and (iii) the Debtor's breach of the Change of Control Covenants does not make the future payment of principal and interest to the Lender less likely (collectively, the "Stanhope Factors"), in accordance with the decision issued by the United States Bankruptcy Court for the Southern District of New York in *In re 53 Stanhope LLC*, 625 B.R. 573, 584 (Bankr. S.D.N.Y. 2021) ("Stanhope").

On May 16 and 23, 2022 and August 2, 2022, the Court conducted a supplemental, evidentiary hearing on the Cure and Reinstatement Option for the Debtor and the Lender to present evidence and testimony in connection with the Stanhope Factors. On September 21, 2022 and September 23, 2022, the Bankruptcy Court denied the Debtor's request for confirmation of the Cure and Reinstatement Option by oral decision and a written memorandum decision,[2] respectively. On October 9, 2022, the Court docketed the *Order Denying Confirmation of the Plan's Cure and Reinstatement Option* [ECF No. 161] (the "Order Denying Confirmation"). Now, the Debtor may proceed with the other options contemplated in the Debtor's Plan.

### 2.    The Debtor's Plan's Refinancing and Cramdown Options

Now that the Cure and Reinstatement Option has failed, the Debtor intends to proceed with a potential refinancing of the loan to satisfy the Allowed portion of the Lender's Claim (the "Refinancing Option") or a cramdown plan (the "Cramdown Option"). The Lender will continue to oppose the Debtor's Plan and believes that both the Refinancing Option and the Cramdown Option are not confirmable and will not be approved by the Court just as the Court rejected the Cure and Reinstatement Option. In any event, the Lender's Plan provides for more favorable treatment for the creditors than the Debtor's Plan.

## IV.    SUMMARY OF THE LENDER'S PLAN

### A.    Classification and Treatment Under the Lender's Plan

The Lender's Plan classifies Claims and Interests into six (6) classes. The six (6) classes for the Debtor consist of: Class 1 (Thor's Claim), Class 2 (Lender's Claim), Class 3 (Priority Non-Tax Claims), Class 4 (Unsecured Claims), Class 5 (Sookdeo's Claim), and Class 6 (Interest Holders). Administrative Expense Claims, Priority Tax Claims, Professional Fee Claims, and United States Trustee Fees are unclassified. The table below summarizes the Lender's Plan's treatment of Claims against and Interests in the Debtor and compares such treatment to the

---

[2] On October 6, 2022, the Court docked an amended memorandum decision denying the Debtor's request for confirmation of the Cure and Reinstatement Option which made several non-substantive changes to the memorandum decision docketed on September 23, 2022.

Debtor's Plan's treatment of the same Claims and Interests:

| Class | Claim or Interest | Status | Voting Rights | Estimated Percentage of Recovery of Allowed Claims or Description of Distributed Assets Under the Lender's Plan | Estimated Percentage of Recovery of Allowed Claims or Description of Distributed Assets Under the Debtor's Plan |
|---|---|---|---|---|---|
| N/A | Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims, and United States Trustee Fees | Not classified | Deemed to Accept | 100% | 100% |
| 1 | Thor's Claim | Impaired | Entitled to Vote | $550,000 or Approximately 21% of Thor's Allowed Claim | $500,000 or Approximately 19% of Thor's Allowed Claim |
| 2 | Lender's Claim | Impaired | Entitled to Vote | Transfer of the Property and the Assets to the Lender or its designee | If the Debtor proceeds with the Refinancing Option or the Cramdown Option, it is unclear how the Debtor intends to classify or treat the unsecured portion of the Lender's Claim. |
| 3 | Priority Non-Tax Claims | Unimpaired | Deemed to Accept | 100% | 100% |

| Class | Claim or Interest | Status | Voting Rights | Estimated Percentage of Recovery of Allowed Claims or Description of Distributed Assets Under the Lender's Plan | Estimated Percentage of Recovery of Allowed Claims or Description of Distributed Assets Under the Debtor's Plan |
|---|---|---|---|---|---|
| 4 | Unsecured Claims | Impaired | Entitled to Vote | Holders of Allowed Class 4 Claims (except the Sookdeo Claim) will receive a one-time 20% distribution promptly following the Effective Date | Holders of Unsecured Claims will receive a 15% dividend to be paid in equal quarterly installments over a period of one year from the effective date of the Debtor's Plan. |
| 5 | Sookdeo Claim | Impaired | Entitled to Vote | Shinelle Sookdeo shall receive an amount equal to the lesser of (a) the Allowed Sookdeo Claim and (b) the amount of insurance (net of any deductible) available to satisfy the Allowed Sookdeo Claim, which amount shall be sourced and paid exclusively by the Debtor's liability insurer. | Unknown how the Debtor specifically intends to treat the Sookdeo Claim. |
| 6 | Interest Holders | Impaired | | 0% | Certain of the Interest Holders will retain equity in the Reorganized Debtor. |

1.    *Thor's Claim*

**Classification** – Allowed Thor Claim.

**Treatment** – On account of the Allowed Thor Claim, Thor shall receive a Cash payment from the Lender on the Distribution Date in the sum of $550,000 in full settlement, satisfaction, and release of the Thor Claim and any accompanying Lien.

**Voting** – Impaired and entitled to vote to accept or reject the Lender's Plan.

2.    *Lender's Claim*

**Classification** – Allowed Lender's Claim.

**Treatment** – On the Effective Date, on account of and in partial satisfaction of the Allowed Lender's Claim, the Debtor shall transfer title to the Property and the Assets, pursuant to transfer, conveyance and assignment documents in favor of the Lender in a form satisfactory to the Lender (the "Assignment Documents"), directly to the Lender (or its designee), free and clear of all Claims, Liens, charges, interests and encumbrances other than the Permitted Exceptions, the New Mortgage, and governmental orders and violations of record applicable to the Property and in effect as of the Effective Date (collectively, the "Property Transfer").  The Lender shall retain and in its discretion apply the Adequate Protection Payments received from the Debtor.

**Voting** – Impaired and entitled to vote to accept or reject the Lender's Plan.

3.    *Priority Non-Tax Claims*

**Classification** – Priority Non-Tax Claims.

**Treatment**  – In full satisfaction, settlement, release and discharge of and in exchange for the Priority Non-Tax Claims, on the Distribution Date, the amount of the Allowed Priority Non-Tax Claims shall be paid in full in Cash by the Lender with pre-petition interest and post-petition interest at the statutory rate. For the avoidance of doubt, Class 3 of the Lender's Plan shall consist of the Water Board Claim.

**Voting** – Unimpaired and deemed to accept the Lender's Plan.

4.    *Unsecured Claims (except the Sookdeo Claim)*

**Classification** – Unsecured Claims (except the Sookdeo Claim).

**Treatment** – In full satisfaction, settlement, release and discharge of such Claims, Allowed Unsecured Claims (except the Sookdeo Claim) shall receive a Cash payment equal to twenty percent (20%) of the Allowed amount of such Claims to be paid by the Lender on the Distribution Date, without any pre-petition or post-petition interest.

**Voting** – Impaired and entitled to vote to accept or reject the Lender's Plan.

     5.     *Sookdeo Claim*

**Classification** — Sookdeo Claim.

**Treatment** — In full satisfaction, settlement, release and discharge of the Sookdeo Claim, Shinelle Sookdeo shall receive an amount equal to the lesser of (a) the Allowed Sookdeo Claim and (b) the amount of insurance (net of any deductible) available to satisfy the Allowed Sookdeo Claim, which amount shall be sourced and paid exclusively by the Debtor's liability insurer.

**Voting** — Impaired and entitled to vote to accept or reject the Plan.

     6.     *Interest Holders*

**Classification** – Interest Holders.

**Treatment** – No distribution shall be made or property of the Estate retained by the Interest Holders. Each Interest Holder's Interest shall be deemed cancelled and extinguished on the Effective Date.

**Voting** – Impaired and conclusively presumed to have rejected the Lender's Plan pursuant to section 1126(g) of the Bankruptcy Code. Not entitled to vote to accept or reject the Lender's Plan.

**B.    Administrative Expense Claims, Priority Tax Claims, Professional Fee Claims, and U.S. Trustee Fees**

Allowed Administrative Expense Claims shall be paid in full in Cash on the Distribution Date, except to the extent that the holder of an Allowed Administrative Expense Claim agrees to a different treatment; provided, however, that Allowed Administrative Expense Claims representing non-tort obligations of the Properties incurred in the ordinary course of business shall be paid in full or performed by the Successor Owners in the ordinary course of business or pursuant to the terms and conditions of the particular transaction.

Final fee applications for expenses authorized pursuant to section 330 of the Bankruptcy Code shall be filed with the Bankruptcy Court and served on all parties in interest within fifteen (15) days of the Effective Date. The Lender shall be responsible for the payment of Allowed Professional Fee Claims incurred on behalf of the Debtor's Estate.

Allowed Priority Tax Claims under section 507(a)(8) of the Bankruptcy Code shall be paid on the Distribution Date in full in Cash with pre-petition interest and post-petition interest at the statutory rate as it accrues from the Petition Date through and including the date of payment, except to the extent that the holder of an Allowed Priority Tax Claim agrees to a different treatment.

Any outstanding United States Trustee fees shall be paid in full in Cash by the Lender on the Effective Date pursuant to section 1930 of title 28 of the United Sates Code. Thereafter, the Lender shall pay from Cash in the Estate all United States Trustee quarterly fees under 28 U.S.C. § 1930(a)(6), plus interest due under 31 U.S.C. § 3717, on all disbursements, including plan payments and disbursements in and outside of the ordinary course of business, until the earliest of

the entry of a final decree closing the Chapter 11 Case, dismissal of the Chapter 11 Case, or conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code.

## C.    Distribution and Means for Implementation of the Lender's Plan

### 1.    Funding of the Lender's Plan

On a Distribution Date, the Lender shall pay the amounts to be paid to Claimants under the Lender's Plan.

### 2.    Creditor Distributions

Unless a Claimant holding an Allowed Claim against the Debtor agrees to a different distribution date or except as otherwise provided herein or as ordered by the Bankruptcy Court, distributions to be made on account of Claims that are Allowed Claims shall be made on the applicable Distribution Date. Any Claims that are Disputed Claims will be paid promptly after a Claim is deemed an Allowed Claim.

### 3.    Disbursing Agent

The Disbursing Agent shall be the entity in its capacity as disbursing agent responsible for making all distributions required to be made under the Plan. Pursuant to Section 5.1.2 of the Lender's Plan, the Lender shall be the Disbursing Agent under the Lender's Plan.

### 4.    Property Transfer

On the Effective Date, the Debtor shall effect the Property Transfer and thereby transfer and convey directly to the Lender title to the Property, the Causes of Action (including, but not limited to the Avoidance Actions), and the other Assets free and clear of all Claims, Liens, charges, interests and encumbrances, other than Permitted Exceptions, the New Mortgage, and governmental orders and violations of record applicable to the Properties and in effect as of the Effective Date.  Any and all Liens, Claims, and encumbrances that have not been expressly preserved under the Lender's Plan shall be deemed extinguished as of such date.

### 5.    Dissolution of the Debtor

The Debtor's principals shall take all actions necessary to dissolve the Debtor in accordance with State law promptly following the Effective Date.

## D.    Treatment of Executory Contracts

On the Effective Date, all Executory Contracts other than Tenant Leases and the CBA (as amended pursuant to the Stipulation of Settlement) will be deemed rejected in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract (i) was previously assumed or rejected by the Debtor pursuant to an order of the Bankruptcy Court, (ii) previously expired or terminated pursuant to its own terms or (iii) is an Executory Contract or unexpired lease that is included in a pending motion to assume such Executory Contract or unexpired lease.  Entry of the Confirmation Order by the Bankruptcy

Court shall constitute approval of such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

The tenants under the Tenant Leases shall not have any continuing obligations to the Debtor following the assumption and assignment of the Tenant Leases to the Lender (or its designee) pursuant to the Property Transfer. The Lender (or its designee) shall assume all benefits and obligations of the Debtor as landlord under all assigned Tenant Leases from and after the Effective Date.

Pursuant to the CBA Order, the Debtor assumed the CBA, as amended pursuant to the Stipulation of Settlement. The CBA, as amended by the Stipulation of Settlement, is ratified for purposes of this Plan and shall be binding on the Lender upon the Effective Date.

## E.    Preferences and Other Causes of Action

The Debtor and, upon confirmation of the Lender's Plan and entry of the Confirmation Order, the Lender waive and release the right to pursue preference claims against non-Insiders under section 547 of the Bankruptcy Code. All other Causes of Action are fully preserved and reserved. All rights pursuant to section 502, 544, 545, and 546 of the Bankruptcy Code and all Avoidance Actions (except those brought against non-Insiders pursuant to section 547 of the Bankruptcy Code) shall be preserved, provided, however, that in connection with the Property Transfer, the Debtor shall transfer the Causes of Action, including the Avoidance Actions (other than Avoidance Action against non-Insiders under section 547 of the Bankruptcy Code), to the Lender.

## F.    Exemption from Transfer Taxes

Section 13.3 of the Lender's Plan provides that, pursuant to section 1146(a) of the Bankruptcy Code: (i) the issuance, transfer, or exchange of notes or equity securities under the Lender's Plan; (ii) the creation of any mortgage, deed of trust, lien, pledge, or other security interest including the New Mortgage issued in connection with the Property Transfer; (iii) the making or assignment of any contract, lease or sublease; (iv) the making or delivery of any deed or other instrument of transfer or other consideration under, in the furtherance of, or in connection with the Lender's Plan, including, without limitation, the Property Transfer, the Assignment Documents and any other payments and transfers pursuant to the Lender's Plan by the Debtor directly to the Lender; and (v) delivery of deeds, bills of sale, or other transfers of tangible property, are exempt from and will not be subject to any stamp tax, or other similar tax or any tax held to be a stamp tax or other similar tax by applicable law (including, but not limited to, any New York State Real Estate Transfer Tax imposed under Article 31 of the Tax Law, any New York State Mortgage Tax imposed under Article 11 of the Tax Law, any New York City Real Property Transfer Taxes under section 11-2102 of the New York City Administrative Code, any mortgage recording tax or any other tax within the purview of section 1146(a) of the Bankruptcy Code including with respect to the New Mortgage, and without the requirement of presentation of any affidavit or form with respect to any tax imposed under Article 31 of the Tax Law, any New York City Real Property Transfer Taxes under section 11-2102 of the New York City Administrative Code with respect to the transactions effectuated pursuant to this Plan). For the avoidance of doubt, the Lender's Plan does not seek any such relief beyond the scope of section

1146(a) of the Bankruptcy Code.

Pursuant to the Lender's Plan, all filing officers (including without limitation, the City Register and/or County Clerk of Bronx County, City of New York) shall be, and hereby are directed to: (i) accept for recording and record, any and all deeds and other documents which are presented to them for recording, including the Assignment Documents and the New Mortgage, immediately upon presentation thereof, with regard to the transactions effectuated pursuant to the Lender's Plan, without the payment of any New York State Real Estate Transfer Tax imposed under Article 31 of the Tax Law, any New York State Mortgage Tax imposed under Article 11 of the Tax Law, any New York City Real Property Transfer Taxes under section 11-2102 of the New York City Administrative Code, any mortgage recording tax or any other tax within the purview of section 1146(a) of the Bankruptcy Code including with respect to the New Mortgage, and without the requirement of presentation of any affidavit or form with respect to any tax imposed under Article 31 of the Tax Law, any New York City Real Property Transfer Taxes under section 11-2102 of the New York City Administrative Code with respect to the transactions effectuated pursuant to the Lender's Plan; and (ii) except as otherwise provided in the Lender's Plan and the Confirmation Order, cancel and discharge of record all liens, encumbrances, claims and other adverse interests in or against the Properties and/or Assets.

For the avoidance of doubt, under the Lender's Plan, the Property Transfer by the Debtor to the Lender and the accompanying recording of the New Mortgage shall be exempt from stamp tax or similar tax, including, but not limited to, the transfer taxes and mortgage recording tax referenced above pursuant to section 1146(a) of the Bankruptcy Code.

Pursuant to the Lender's Plan, all governmental authorities and any other taxing authorities shall be permanently enjoined from the commencement or continuation of any action to collect from the Property, the Assets, the Lender, the New Mortgage Lender, or their respective Related Persons, any taxes from which the transactions effectuated pursuant to this Plan are exempt, pursuant to and in furtherance of section 1146(a) of the Bankruptcy Code, including, but not limited to, New York State Real Estate Transfer Taxes, New York City Real Property Transfer Taxes, and applicable mortgage recording tax, and any penalties, interest, or additions to any tax related thereto.

Pursuant to the Lender's Plan, the City Register and/or County Clerk of Bronx County office shall record the deed of each Property, and other similar conveyance documents required to be delivered under this Plan without the payment of any stamp tax, transfer tax, or similar tax, and without the presentation of affidavits, instruments, or returns otherwise required for recording or filing pursuant to section 1146(a) of the Bankruptcy Code.

## V.    LIQUIDATION ANALYSIS

If the Debtor's Chapter 11 Case was converted to a case under chapter 7 of the Bankruptcy Code, the Property and Assets would be liquidated and the proceeds of such liquidation distributed in accordance with the priorities established by the Bankruptcy Code.  Based on the appraisals described above, the Lender believes that the amount of the Lender's Claim is in excess of the value of the Property and other Assets.  In such a scenario, the Lender expects that no creditor would be entitled to any distribution on their Claims aside from a partial distribution on the

Lender's Claim. In other words, were the Debtor's Chapter 11 Case converted to a case under chapter 7 of the Bankruptcy Code, holders of the Allowed Thor Claim and Allowed General Unsecured Claims would receive zero distribution on account of such Claims.

The Lender holds a Secured Claim over the Property and all of the Debtor's Assets that are entitled to first priority under the Bankruptcy Code. The Lender and the Debtor agree that the value of the Debtor's Property is less than the amount of the Lender's Claim. Accordingly, even without regard to trustee expenses in a bankruptcy case pursuant to chapter 7 of the Bankruptcy Code, and the time it would take to market and sell the Property and Assets, a liquidation of the Debtor's Property and Assets under chapter 7 cases under the Bankruptcy Code would yield no distribution for any other creditor.

## VI.    RISK FACTORS TO BE CONSIDERED

Holders of Claims against the Debtor should read and consider carefully the information set forth below, as well as the other information set forth in the Disclosure Statement (and the documents delivered together herewith and/or incorporated by reference), prior to voting to accept or reject the Lender's Plan. This information, however, should not be regarded as the only risks involved in connection with the Lender's Plan and/or its implementation.

**Risk of Confirmation**. The Bankruptcy Court, which sits as a court of equity, may exercise substantial discretion. As discussed above, section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and requires, among other things, that the value of distributions to dissenting creditors and shareholders not be less than the value of distributions such creditors and shareholders would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code. Although the Lender believes that the Lender's Plan will meet such tests, there can be no assurance that the Bankruptcy Court would reach the same conclusion.

**Risk of Effective Date**. The Lender believes that each of the conditions to the Effective Date set forth in Section 10.2 of the Plan will be satisfied reasonably soon after the Confirmation Date. However, there can be no assurance as to such timing or as to whether it will occur.

## VII.    CERTAIN TAX CONSEQUENCES

Confirmation of the Plan may have federal income tax consequences for the holders of Claims and Interests. The Lender has not obtained and does not intend to request a ruling from the Internal Revenue Service, nor has the Lender obtained an opinion of counsel with respect to any tax matters. Any federal income tax matters raised by confirmation of the Lender's Plan are governed by the Internal Revenue Code and the regulations promulgated thereunder. The following is intended to be a summary only and not a substitute for careful tax planning with a tax professional. The federal, state, and local tax consequences of the Lender's Plan may be complex in some circumstances and, in some cases, uncertain. Accordingly, each holder of a Claim or Interest is strongly urged to consult with his or her own tax advisor regarding the federal, state, and local tax consequences of the Lender's Plan, including, but not limited to the receipt of Cash under the Lender's Plan. An unsecured creditor that receives Cash in satisfaction of its Claim may recognize gain or loss, with respect to the principal amount of its Claim, equal to the difference between (y) the unsecured creditor's basis in the Claim (other than the portion of the Claim, if any,

attributable to accrued interest), and (z) the balance of the Cash received after any allocation to accrued interest. The character of the gain or loss as capital gain or loss, or ordinary income or loss, will generally be determined by whether the Claim is a capital asset in the creditor's hands. The income or loss generally will be ordinary, regardless of whether the creditor's Claim is a capital asset in its hands. **DUE TO A LACK OF DEFINITIVE JUDICIAL OR ADMINISTRATIVE AUTHORITY AND INTERPRETATION, SUBSTANTIAL UNCERTAINTIES EXIST WITH RESPECT TO VARIOUS TAX CONSEQUENCES OF THE PLAN. CLAIMANTS ARE URGED TO CONSULT WITH THEIR OWN TAX ADVISORS AS TO SPECIFIC TAX CONSEQUENCES (FEDERAL, STATE, AND LOCAL) OF THE LENDER'S PLAN.**

## VIII.    RETENTION OF JURISDICTION

The Bankruptcy Court will retain exclusive jurisdiction over all matters arising under, arising in or out of, or relating to the Debtor's Chapter 11 Case and the Lender's Plan to the fullest extent permitted by law, including, but not limited to, among other things, jurisdiction to:

i.    allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim, the resolution of any objections to the allowance or priority of Claims or Interests, and the determination of any Cure amount;

ii.    resolve any matters related to the rejection of any Executory Contract and to hear, determine, and, if necessary, liquidate any Claims arising therefrom;

iii.    hear and determine all applications for compensation and reimbursement of expenses of professionals under section 330, 331, 363, 503(b), 1103 and 1129(c)(9) of the Bankruptcy Code;

iv.    ensure that distributions to Claimants holding Allowed Claims are accomplished pursuant to the provisions of the Lender's Plan;

v.    decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

vi.    enter such orders as may be necessary or appropriate to implement, enforce, or consummate the provisions of the Lender's Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Lender's Plan, the Disclosure Statement or the Confirmation Order;

vii.    resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, or enforcement of the Lender's Plan or any contract, instrument, release or other agreement or document that is executed or created pursuant to the Lender's Plan, or any entity's rights arising from or obligations incurred in connection with the Lender's Plan or such documents;

viii.    consider any modification of the Lender's Plan under section 1127 of the Bankruptcy Code or approve any modification of the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Lender's Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Lender's Plan, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Lender's Plan or the Confirmation Order, or enter any order in aid of the Confirmation Order pursuant to section 1142 of the Bankruptcy Code, in such manner as may be necessary or appropriate to consummate the Lender's Plan;

ix.    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of the Lender's Plan or the Confirmation Order;

x.    hear and determine all Causes of Action to the full extent permitted under 28 U.S.C. §1334 and 28 U.S.C. §157;

xi.    enter an order concluding and terminating the Chapter 11 Case;

xii.    enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Case; and

xiii.    hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code.

## IX.    VOTING INSTRUCTIONS AND PROCEDURES

Pursuant to section 1126(f) of the Bankruptcy Code, Claims in Class 3 are unimpaired under the Lender's Plan and are deemed to accept the Lender's Plan, and holders of such Claims are not entitled to vote on the Lender's Plan.  Interests in Class 5 are impaired and deemed to reject the Lender's Plan and not entitled to vote on the Lender's Plan. Holders of Claims in Classes 1, 2, 4, and 5 are entitled to vote on whether to accept the Lender's Plan, however, the Lender's filing of this Disclosure Statement and the Lender's Plan on the Court's electronic case filing system shall constitute the Lender's vote in favor of accepting the Lender's Plan..

The following materials, among others, constitute the solicitation package for the Lender's Plan:

i.    this Disclosure Statement with all exhibits, including the Lender's Plan, and any other supplements or amendments to these documents; and

ii.    the appropriate ballot and applicable voting instructions.

The Lender shall serve a copy of this Disclosure Statement with all exhibits, including the

Lender's Plan and appropriate ballot, on all holders of Claims and Interests. After carefully reviewing the Lender's Plan, this Disclosure Statement and the detailed instructions accompanying your ballot, please indicate your acceptance or rejection of the Lender's Plan by voting in favor of or against the Lender's Plan on the enclosed ballot. Please complete and sign your original ballot and return it by the voting deadline to Arnold & Porter Kaye Scholer LLP, counsel to the Lender, at the address listed below. **THE VOTING DEADLINE IS _____ __, 2022, AT __ _.M. (PREVAILING EASTERN TIME).** In voting to accept or reject the Lender's Plan, you must use only the ballot sent to you with this Disclosure Statement. **IN ORDER FOR YOUR VOTE TO BE COUNTED, YOUR BALLOT MUST BE PROPERLY COMPLETED AS SET FORTH ABOVE AND IN ACCORDANCE WITH THE VOTING INSTRUCTIONS ON THE BALLOT AND RECEIVED NO LATER THAN THE VOTING DEADLINE BY THE ATTORNEYS FOR THE LENDER AT THE FOLLOWING ADDRESS:**

Arnold & Porter Kaye Scholer LLP
Attention: Justin Imperato
250 West 55th Street
New York, New York 10019
Email: justin.imperato@arnoldporter.com

If you have any questions about (i) the procedure for voting your Claim or with respect to the packet of materials that you have received or (ii) the amount of your Claim, or if you wish to obtain an additional copy of the Lender's Plan, this Disclosure Statement, or any appendices or exhibits to such documents, please contact counsel to the Lender at the above referenced address.

## X.    <u>NOTICES</u>

To be effective, all notices required or permitted to be provided under the Lender's  Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight courier service, freight prepaid, to the addressed parties identified in section 13.9 of the Lender's Plan.

[*Remainder of the Page Intentionally Left Blank*]

## XI.    <u>**CONCLUSION**</u>

The Lender urges Claimants to vote to accept the Lender's Plan and to evidence such acceptance by returning their ballots so that they will be received not later than __ _.m. on _____ __, 2022, prevailing Eastern Time.

Dated: New York, New York
      October 10, 2022

*/s/ Benjamin Mintz*              
Benjamin Mintz
Justin Imperato
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, New York 10019
Tel: (212) 836-8000
Fax: (212) 836-8689
Email: benjamin.mintz@arnoldporter.com
Email: justin.imperato@arnoldporter.com

## EXHIBIT A

**The Lender's Plan**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

In re

975 Walton Bronx LLC,

                               Debtor.

Chapter 11

Case No. 21-40487 (JMM)

---------------------------------------------------------------- x

## WALTON IMPROVEMENT GROUP LLC'S
## <u>PLAN OF LIQUIDATION FOR THE DEBTOR</u>

### Dated: October 10, 2022

**TABLE OF CONTENTS**

ARTICLE 1 DEFINITIONS; RULES OF INTERPRETATION....................................................1

ARTICLE 2 UNCLASSIFIED CLAIMS...................................................................................13

ARTICLE 3 CLASSIFICATION AND TREATMENT OF CLAIMS .....................................15

ARTICLE 4 ACCEPTANCE OR REJECTION OF THE PLAN ...............................................17

ARTICLE 5 MEANS FOR IMPLEMENTATION OF THE PLAN...........................................18

ARTICLE 6 CAUSES OF ACTION ..........................................................................................19

ARTICLE 7 PROVISIONS GOVERNING DISTRIBUTIONS, RESOLUTION OF
    DISPUTED CLAIMS AND OBJECTIONS TO PROOFS OF CLAIM.........................20

ARTICLE 8 EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...............................22

ARTICLE 9 RELEASES AND EXCULPATION ......................................................................23

ARTICLE 10 CONFIRMATION AND CONSUMMATION OF THE PLAN..........................25

ARTICLE 11 EFFECT OF CONFIRMATION .........................................................................26

ARTICLE 12 RETENTION OF JURISDICTION .....................................................................27

ARTICLE 13 GENERAL PROVISIONS ..................................................................................29

ARTICLE 14 MODIFICATIONS ..............................................................................................35

ARTICLE 15 CLOSING THE CASE.........................................................................................35

The Walton Improvement Group LLC (the "**Lender**") proposes this plan of liquidation for 975 Walton Bronx LLC (the "**Debtor**").  **UPON CONFIRMATION, THIS PLAN SHALL BE A BINDING OBLIGATION BETWEEN AND AMONG THE DEBTOR, EACH CLAIMANT, THE INTEREST HOLDERS, AND EACH OF THEIR RELATED PERSONS (AS ALL SUCH TERMS ARE DEFINED BELOW).**

## ARTICLE 1

## DEFINITIONS; RULES OF INTERPRETATION

As used in this Plan, the following terms will have the meanings hereinafter set forth:

1.1      "**Adequate Protection Payments**" shall mean the Cash payment by the Debtor to the Lender pursuant to the Cash Collateral Orders.

1.2      "**Administrative Expense Claim**" shall mean a Claim for costs and expenses of administration of the Bankruptcy Case asserted to be entitled to priority under section 507(a)(2) or section 507(b) of the Bankruptcy Code or any fees and charges assessed against the Debtor's Estate under section 1930, chapter 123, of title 28 of the United States Code.

1.3      "**Administrative Expense Claims Bar Date**" shall mean a date thirty (30) days after the Effective Date.

1.4      "**Affiliated Property Managers**" shall mean JLM Partners LLC, a New York limited liability company and property manager for the Property together with Cedar Bridge Management Corporation, a New York corporation and also a property manager for the Property.

1.5      "**Allowed Administrative Expense Claim**" shall mean an Administrative Expense Claim to the extent such Administrative Expense Claim is an Allowed Claim entitled to priority under section 507(a)(2) or section 507(b) of the Bankruptcy Code and allowed under sections 328, 330, 363, 364(c)(1), 365, 503(b) or 507(b) of the Bankruptcy Code.

1.6 "**Allowed Claim**" shall mean, with respect to a Claim, or any portion thereof, in any Class or category specified, a Claim (a) to the extent that a Proof of Claim is filed timely or, with leave of the Court late filed as to which (i) no party in interest files an objection pursuant to the terms of the Plan or (ii) is allowed by a Final Order; or (b) is listed on the Debtor's Schedules or any amendments thereto but which is not listed therein as disputed, unliquidated or contingent, and is not otherwise subject to a timely objection. For the avoidance of doubt, to the extent a Claim is not an Allowed Claim, such Claim is still subject to objection based upon potentially applicable rights of avoidance, setoff, subordination, and any other defenses, all of which rights and defenses are fully preserved in favor of the Lender.

1.7 "**Allowed Priority Non-Tax Claim**" shall mean a Priority Non-Tax Claim to the extent such Priority Non-Tax Claim is an Allowed Claim.

1.8 "**Allowed Priority Tax Claim**" shall mean a Priority Tax Claim to the extent such Priority Tax Claim is an Allowed Claim.

1.9 "**Allowed Professional Fee Claim**" shall mean a Professional Fee Claim to the extent such Professional Fee Claim is an Allowed Claim.

1.10 "**Allowed Thor Claim**" shall mean Thor's Judgment Claim to the extent such Claim is an Allowed Claim.

1.11 "**Allowed Unsecured Claim**" shall mean an Unsecured Claim to the extent such Unsecured Claim is an Allowed Claim.

1.12 "**Allowed Lender's Claim**" shall mean the Lender's Claim.

1.13 "**Assets**" shall mean all of the right, title and interest in and to property of whatever type or nature owned by the Debtor or subsequently acquired by the Debtor, including any property of the Estate for purposes of section 541 of the Bankruptcy Code, including the Property and all

appurtenant rights, the Debtor's books and records, Cash, Causes of Action (including the Avoidance Actions), all rights and claims under insurance policies (including the right to any refunded premiums) naming the Debtor as an insured and/or an additional insured, and other incidental property.

      1.14      "**Assignment Documents**" shall have the meaning ascribed to such term in Section 3.5 of this Plan.

      1.15      "**Avoidance Actions**" shall mean all claims and causes of action which the Debtor has or had the power to assert pursuant to any or all of section 510, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code.  For the avoidance of doubt, Avoidance Actions include, but are not limited to, claims and causes of action against one or more of the Affiliated Property Managers and the Insiders under the foregoing Bankruptcy Code sections for recovery of the insider transfers made to such Persons.

      1.16      "**Bankruptcy Case**" shall mean this Chapter 11 bankruptcy case of the Debtor.

      1.17      "**Bankruptcy Code**" shall mean Title 11 of the United States Code (11 U.S.C. § 101 et. seq.), as in effect on the Petition Date and as amended during the Bankruptcy Case.

      1.18      "**Bankruptcy Court**" shall mean the Court as defined below.

      1.19      "**Bankruptcy Rules**" shall mean the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any local rules of the Bankruptcy Court, as in effect on the Petition Date, together with any and all amendments and modifications thereto that were subsequently made applicable to the Bankruptcy Case.

      1.20      "**Bar Date**" shall mean the general bar date and the governmental bar date, as applicable, for filing proofs of claim established by the Bar Date Order.

3

1.21    "**Bar Date Order**" shall mean the *Order Establishing Bar Date for the Filing of Proofs of Claim Against Debtor Pursuant to Bankr. Rule 3003(c)(3)* [ECF No. 17] or other Order of the Bankruptcy Court establishing a deadline for the filing of proofs of prepetition Claims.

1.22    "**Cash**" shall mean all cash and cash equivalents which evidence immediately available funds in United States dollars.

1.23    "**Cash Collateral Orders**" shall mean the *Stipulation and Consent Order (A) Authorizing Debtor's Use of Cash Collateral and (B) Providing Adequate Protection Therefore* [ECF No. 34] together with the *Stipulation and Consent Order Extending Prior Stipulation and Consent Order for the Use of Cash Collateral* [ECF Ni. 140].

1.24    "**Causes of Action**" shall mean any and all actions, proceedings, causes of action (including, without limitation, any causes of action of the Debtor under Chapter 5 of the Bankruptcy Code, i.e., the Avoidance Actions), suits, reckonings, covenants, contracts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, variances, trespasses, damages, judgments, executions, claims and demands whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured or whether asserted or assertable directly or derivatively, in law, equity or otherwise, and all rights thereunder or attendant thereto.

1.25    "**CBA**" shall mean that certain Collective Bargaining Agreement between SEIU Local 32BJ and the Debtor effective March 15, 2019 through March 14, 2023 covering bargain unit members employed by the Debtor at the Property.

1.26    "**CBA Order**" shall mean the *Order Approving Stipulation of Settlement and Assumption of Collective Bargaining Agreement, as Modified* [ECF No. 48].

1.27    "**Claim**" shall mean a right to payment against the Debtor as set forth in § 101(5) of the Bankruptcy Code.

1.28    "**Claimant**" shall mean the holder of a Claim.

1.29    "**Class**" shall mean a category of Claims or Interests set forth in Article 3 of this Plan, as such term is used and described in section 1122 and section 1123(a)(1) of the Bankruptcy Code.

1.30    "**Confirmation Date**" shall mean the date of the entry of the Confirmation Order.

1.31    "**Confirmation Hearing**" shall mean the hearing held pursuant to section 1128 the Bankruptcy Code before the Bankruptcy Court regarding the proposed confirmation of the Plan.

1.32    "**Confirmation Order**" shall mean the order of the Court confirming the Plan.

1.33    "**Court**" shall mean the United States Bankruptcy Court for the Eastern District of New York.

1.34    "**Cure**" shall mean the obligations required to be paid in connection with the assumption and assignment of an Executory Contract pursuant to section 365 of the Bankruptcy Code, including (a) the cure of any non-monetary defaults to the extent required, if at all, pursuant to section 365 of the Bankruptcy Code, and (b) with respect to monetary defaults, the payment, within a reasonable period of time following the Effective Date, of Cash, with respect to the assumption and assignment of such Executory Contract, pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations or such other amount as may be determined by the Bankruptcy Court or as agreed upon by the parties, under such Executory Contract, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

1.35    "**Debtor**" shall mean 975 Walton Bronx LLC.

1.36     "**<u>Disallowed Claim</u>**" shall mean all or such part of a Claim that is disallowed by a Final Order.

1.37     "**<u>Disbursing Agent</u>**" shall mean the entity in its capacity as disbursing agent responsible for making all distributions required to be made under this Plan.  Pursuant to <u>Section 5.1.2</u> of this Plan, the Lender shall be the Disbursing Agent under the Plan.

1.38     "**<u>Disclosure Statement</u>**" shall mean that certain disclosure statement relating to this Plan, including, without limitation, all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.39     "**<u>Disputed Claim</u>**" shall mean the whole or any portion of a Claim (a) that is neither an Allowed Claim nor a Disallowed Claim, (b) that is listed as disputed, contingent or unliquidated on the Debtors' schedules or that is otherwise subject to a timely objection or (c) for which a Proof of Claim has been timely filed with the Bankruptcy Court to which an objection is timely filed as to which a Final Order has not been entered allowing or disallowing such Claim or any portion thereof.

1.40     "**<u>Distribution</u>**" shall mean any distribution made pursuant to the terms of this Plan.

1.41     "**<u>Distribution Date</u>**" shall mean: (i) the initial Distribution made on or before the thirtieth (30) day following the Effective Date; and (ii) any subsequent date on which a Distribution is made.

1.42     "**<u>Distribution Record Date</u>**" shall mean the Confirmation Date or such other date as may be designated in the Confirmation Order.

1.43     "**<u>Effective Date</u>**" shall mean the first business day after the conditions to the Effective Date set forth in Section 10.2 of the Plan have been satisfied or waived in accordance therewith, or such later date determined by the Lender.

1.44     "**Estate**" shall mean the estate of the Debtor created upon the commencement of the Bankruptcy Case pursuant to section 541 of the Bankruptcy Code.

1.45     "**Executory Contracts**" shall mean "executory contracts" and "unexpired leases" as such terms are used within section 365 of the Bankruptcy Code.

1.46     "**Final Order**" shall mean an order or judgment of the Court (or other court of competent jurisdiction) entered on the docket in the Bankruptcy Case (or on the docket of any other court of competent jurisdiction), which has not been reversed, modified, amended, vacated or stayed and as to which (a) the time to appeal or to seek review, petition for certiorari or move for a new trial, re-argument or rehearing has expired and as to which no appeal, review, rehearing, petition for certiorari or other proceedings for a new trial, re-argument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, re-argument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or a new trial, re-argument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, re-argument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause such order not to be a Final Order.

1.47     "**Impaired**" shall mean "impaired" within the meaning of section 1124 of the Bankruptcy Code.

1.48     "**Insiders**" shall mean, but not be limited to, collectively, (i) 1464 Ocean Avenue LLC, a New York limited liability company, (ii) 15 & 30 Westminster Road Realty Co., LLC, a New York limited liability company, (iii) 2-12 Pinehurst LLC, a New York limited liability company, (iv)

327 East 119 LLC, a New York limited liability company, (v) Cedar Bridge MGT LLC, a New Jersey limited liability company, (vi) Cedar Hudson Group LLC, a New Jersey limited liability company, (vii) Cedar Hudson Pass Through, (viii) Cedarbridge Capital LLC, a New Jersey limited liability company, (ix) Coltown Associates, Inc., a New York corporation, (x) Eliezer Jeremias, an individual, (xi) Terra Financial Solutions, LLC, a New Jersey limited liability company, (xii) 15-21 Crooke LLC, (xiii) the J Partners Group LLC,  and (xiv) any "insider" of the Debtor with the meaning of Section 101(31).

1.49    "**Interest**" shall mean an existing ownership interest in the Debtor.

1.50    "**Interest Holder**" shall mean a holder and owner of an existing Interest in the Debtor including, but not limited to, (i) 15-21 Crooke LLC and (ii) the J Partners Group LLC.

1.51    "**Investors Bank**" shall mean Investors Bank, a division of Citizens Bank, N.A.

1.52    "**Lender**" shall mean the Walton Improvement Group LLC.

1.53    "**Lender's Claim**" shall mean the Secured Claim of the Lender on account of indebtedness and obligations owed by the Debtor pursuant to the Loan Documents and all loan documents related thereto, and secured by, among other things, the Property.  The Lender's Claim is in an amount not less than $25,458,110.80 as of the Petition Date.

1.54    "**Lien**" shall mean a charge against or interest in property to secure payment of a debt or performance of an obligation, including but not limited to valid and enforceable liens, mortgages, security interests, pledges, charges, encumbrances, or other legally cognizable security devices of any kind.

1.55    "**Loan Documents**" shall mean, in connection with the Debtor's acquisition of the Property, that certain: (i) Consolidated Promissory Note dated April 1, 2015 between the Debtor and Investors Bank in the principal amount of $22,500,000; (ii) Mortgage Consolidation, Extension and

Modification Agreement dated April 1, 2015 between the Debtor and Investors Bank recorded on May 4, 2015 in the Office of the City Register of the City of New York under CRFN 2015000148329; (iii) the recorded Mortgage and Security Agreement dated April 1, 2015 between the Debtor and Investors Bank; (iv) Loan Agreement dated April 1, 2015 between the Debtor and Investors Bank; and (v) other related documents and instruments.  The Loan Documents also include all documents providing for Investors Bank's assignment of the Loan Documents to Lender.

1.56    "**New Mortgage**" shall mean the mortgage against the Property from and after the Effective Date between the Lender and New Mortgage Lender, which New Mortgage shall be acceptable to the Lender .

1.57    "**New Mortgage Lender**" shall mean the lender(s) under the New Mortgage, as determined by the Lender.

1.58    "**Permitted Exceptions**" shall mean (i) the Tenant Leases and (ii) normal and customary covenants and easements, excluding Liens for the payment of money; provided, however, that Permitted Exceptions shall not include any covenant or easement which shall, in the reasonable judgment of the Lender, interfere with the use, operation or ownership of the Property or otherwise adversely affect its value, ability to be financed or marketability, except as permitted herein.

1.59    "**Person**" shall mean an individual, corporation, partnership, association, joint stock company, joint venture, limited liability company, limited liability partnership, trust, estate, unincorporated organization or other entity, or any government, governmental agency or any subdivision, department or other instrumentality thereof.

1.60    "**Petition Date**" shall mean February 25, 2021 the date of the filing of the Bankruptcy Case by the Debtor.

1.61      "**Plan**" shall mean this Plan of Liquidation for the Debtor, and any and all modifications and/or amendments hereto.

1.62      "**Plan Supplement**" shall mean the compilation of documents, if any, relating to the Plan not included herewith, that the Lender  shall file with the Bankruptcy Court ten (10) days prior to the voting deadline for the Plan (or such later date as approved by the Bankruptcy Court).

1.63      "**Priority Non-Tax Claim**" shall mean any Claim against the Debtor asserted to be entitled to priority in right of payment under section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

1.64      "**Priority Tax Claim**" shall mean any Claim against the Debtor asserted to be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code.

1.65      "**Professional Fee Claim**" shall mean a claim under sections 327, 330(a), 503 or 1103 of the Bankruptcy Code for the compensation of the Debtor's counsel for services rendered or reimbursement of expenses incurred in the Bankruptcy Case on or prior to the Effective Date.

1.66      "**Proof of Claim**" shall mean any Secured Claim or Unsecured Claim that must be filed by a Claimant or Interest Holder by the date(s) designated by the Bankruptcy Court as the last date(s) for filing proofs of claim against the Debtors, or as is otherwise permitted to be filed against any of the Debtors pursuant to a Final Order of the Bankruptcy Court.

1.67      "**Property**" shall mean the Debtor's real property located at 975 Walton Avenue, Bronx, New York.

1.68      "**Property Transfer**" shall have the meaning ascribed to such term in Section 3.5 of this Plan.

1.69      "**Related Person**" shall mean, with respect to any Person, its Affiliates (as such term is used in section 101(2) of the Bankruptcy Code), its predecessors, successors and assigns

(whether by operation of law or otherwise), and with respect to any of the foregoing, each of their respective present and former Affiliates and each of their respective current and former officers, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, assigns, subsidiaries, principals, members, employees, agents, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each acting in such capacity, and any Person claiming by or through any of them (including their respective officers, directors, employees, managers, advisors and professionals).

      1.70      "**Schedules**" shall mean the Debtor's schedules filed on the Court's electronic case filing system at ECF No. 1.

      1.71      "**Sookdeo Claim**" shall mean the $5 million personal injury lawsuit claim (Claim No. 4-1) filed by Shinelle Sookdeo against the Debtor's estate based on the Sookdeo Personal Injury Action.

      1.72      "**Sookdeo Personal Injury Action**" shall mean that certain personal injury action commenced by Shinelle Sookdeo on December 11, 2019 against the Debtor in the New York Supreme Court (Bronx County) bearing Index No. 34656/2019E.

      1.73      "**Statement of Financial Affairs**" shall mean the Debtor's statement of financial affairs filed on the Court's electronic case filing system at ECF No. 23.

      1.74      "**Secured Claim**" shall mean a Claim secured by a Lien on property included within the Debtor's Estate.

      1.75      "**Stipulation of Settlement**" shall mean that certain Stipulation of Settlement between SEIU Local 32BJ and the Debtor that amended the CBA and is attached as Exhibit A to the

*Debtor's Motion to Assume Collective Bargaining Agreement, as Amended, Based on the Attached Settlement* [ECF No. 44-1].

1.76      "**Tax Law**" shall mean the New York State Tax Law.

1.77      "**Tenant Leases**" shall mean the Debtor's unexpired leases of residential and commercial real property with tenants residing or doing business, respectively, at the Property.

1.78      "**Thor**" shall mean 975 Thor Walton Avenue LLC.

1.79      "**Thor's Claim**" shall mean Thor's $2,600,290 judgment Claim against the Debtor's Estate that is identified on the Debtor's Schedule D at line 2.1.

1.80      "**Unimpaired**" shall mean, with respect to a Claimant or Interest Holder, that such Claimant or Interest Holder is not Impaired.

1.81      "**Unsecured Claim**" shall mean a Claim for which the Claimant does not hold (a) a valid, perfected and enforceable Lien, security interest or other interest in or encumbrance against property of the Debtor or the Debtor's Estate or (b) a right to setoff to secure the payment of such Claim.  An Unsecured Claim includes, but is not limited to, a Claim for damages resulting from rejection of any Executory Contract pursuant to section 365 of the Bankruptcy Code, and does not include Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims, Priority Non-Tax Claims, the Lender's Claim, Thor's Secured Claim, or the Sookdeo Claim.

1.82      **Rules of Interpretation**.  For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) any reference in this Plan to an existing document, schedule or exhibit filed or to be filed means such document, schedule or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (c) any reference to a Claimant includes that Claimant's successors and assigns; (d) all references in this Plan to

Sections and Articles are references to Sections and Articles of or to this Plan, as the same may be amended, waived or modified from time to time; (e) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular Section, subsection or clause contained in this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (g) subject to <u>Section 13.10</u> of this Plan and the provisions of any contract or other agreements or documents entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; (h) the rules of construction set forth in section 102 of the Bankruptcy Code will apply; and (i) the term "including" shall be construed to mean "including, but not limited to," "including, without limitation," or words of similar import.

## ARTICLE 2

### UNCLASSIFIED CLAIMS

2.1    **<u>Administrative Expense Claims</u>**.  Allowed Administrative Expense Claims shall be paid in full in Cash on the Distribution Date, except to the extent that the holder of an Allowed Administrative Expense Claim agrees to a different treatment; <u>provided</u>, <u>however</u>, that Allowed Administrative Expense Claims representing non-tort obligations of the Property incurred in the ordinary course of business shall be paid in full or performed by the Lender in the ordinary course of business or pursuant to the terms and conditions of the particular transaction.

2.2    **<u>Professional Fee Claims</u>**.  Final fee applications for expenses authorized pursuant to section 330 of the Bankruptcy Code shall be filed with the Bankruptcy Court and served on all parties in interest within fifteen (15) days of the Effective Date.  The Lender shall be responsible for the payment of Allowed Professional Fee Claims incurred on behalf of the Debtor's Estate.

2.3　　　　**Priority Tax Claims**.  Allowed Priority Tax Claims shall be paid in full in Cash by the Lender with pre-petition interest and post-petition interest at the statutory rate on the Distribution Date, except to the extent that the holder of an Allowed Priority Tax Claim agrees to a different treatment.

2.4　　　　**United States Trustee Fees**.  Any outstanding United States Trustee fees shall be paid in full in Cash by the Lender on the Effective Date pursuant to section 1930 of title 28 of the United Sates Code.  Thereafter, the Lender shall pay from Cash in the Estate all United States Trustee quarterly fees under 28 U.S.C. § 1930(a)(6), plus interest due under 31 U.S.C. § 3717, on all disbursements, including plan payments and disbursements in and outside of the ordinary course of business, until the earliest of the entry of a final decree closing the Chapter 11 case, dismissal of the Chapter 11 case, or conversion of the Chapter 11 case to a cases under Chapter 7 of the Bankruptcy Code..

2.5　　　　**Bar Date for Administrative Expense Claims**.  Unless otherwise ordered by the Bankruptcy Court, requests for the payment of Administrative Expense Claims (other than non-tort obligations incurred in the ordinary course of business) must be filed with the Bankruptcy Court and served on the Lender and its counsel at the address for notices listed in <u>Section 13.9</u> of this Plan no later than the Administrative Expense Claims Bar Date.  Any Person that is required to file and serve a request for payment of an Administrative Expense Claim and fails to timely file and serve such request, shall be forever barred, estopped and enjoined from asserting such Administrative Expense Claim or participating in distributions under this Plan on account thereof.  The Lender (and not the Debtor or any other party in interest) may object to requests for payment of an Administrative Expense Claim and such objection must be filed with the Bankruptcy Court and served on the applicable Administrative Expense Claimant no later than 60 days following the Effective Date.

## ARTICLE 3

## CLASSIFICATION AND TREATMENT OF CLAIMS

### Class 1: Thor's Claim

3.1        **Classification** – Allowed Thor Claim.

3.2        **Treatment** – On account of the Allowed Thor Claim, Thor shall receive a Cash payment from the Lender on the Distribution Date in the sum of $550,000 in full settlement, satisfaction, and release of the Thor Claim and any accompanying Lien.

3.3        **Voting** – Impaired and entitled to vote to accept or reject the Plan.

### Class 2: Lender's Claim

3.4        **Classification** – Allowed Lender's Claim.

3.5        **Treatment** – On the Effective Date, on account of and in partial satisfaction of the Allowed Lender's Claim, the Debtor shall transfer title to the Property and the Assets, pursuant to transfer, conveyance and assignment documents in favor of the Lender in a form satisfactory to the Lender (the "Assignment Documents"), directly to the Lender (or its designee), free and clear of all Claims, Liens, charges, interests and encumbrances other than the Permitted Exceptions, the New Mortgage, and governmental orders and violations of record applicable to the Property and in effect as of the Effective Date (collectively, the "Property Transfer").   The Lender shall retain and in its discretion apply the Adequate Protection Payments received from the Debtor.

3.6        **Voting** – Impaired and entitled to vote to accept or reject the Plan.

### Class 3: Priority Non-Tax Claims

3.7        **Classification** – Priority Non-Tax Claims.

3.8        **Treatment**   – In full satisfaction, settlement, release and discharge of and in exchange for the Priority Non-Tax Claims, on the Distribution Date, the amount of the Allowed

Priority Non-Tax Claims shall be paid in full in Cash by the Lender with pre-petition interest and post-petition interest at the statutory rate.

3.9        **Voting** – Unimpaired and deemed to accept the Plan.

### Class 4: Unsecured Claims (Excluding the Sookdeo Claim)

3.10       **Classification** – Unsecured Claims (excluding the Sookdeo Claim).

3.11       **Treatment** – In full satisfaction, settlement, release and discharge of such Claims, holders of Allowed Unsecured Claims shall receive a Cash payment equal to twenty percent (20%) of the Allowed amount of such Claims to be paid by the Lender on the Distribution Date, without any pre-petition or post-petition interest.

3.12       **Voting** – Impaired and entitled to vote to accept or reject the Plan.

### Class 5: Sookdeo Claim

3.13       **Classification** — Sookdeo Claim.

3.14       **Treatment** — In full satisfaction, settlement, release and discharge of the Sookdeo Claim, Shinelle Sookdeo shall receive an amount equal to the lesser of (a) the Allowed Sookdeo Claim and (b) the amount of insurance (net of any deductible) available to satisfy the Allowed Sookdeo Claim, which amount shall be sourced and paid exclusively by the Debtor's liability insurer.

3.15       **Voting** — Impaired and entitled to vote to accept or reject the Plan.

### Class 6: Interest Holders

3.16       **Classification** – Interest Holders.

3.17       **Treatment** – No distribution shall be made or property of the Estate retained by the Interest Holders.  Each Interest Holder's Interest shall be deemed cancelled and extinguished on the Effective Date.

3.18       **Voting** – Impaired and conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Not entitled to vote to accept or reject the Plan.

## ARTICLE 4

## ACCEPTANCE OR REJECTION OF THE PLAN

4.1     **Impaired Classes of Claims and Interests Entitled to Vote**.  Claimants in each Impaired Class of Claims that receive or retain property pursuant to this Plan shall be entitled to vote to accept or reject this Plan.

4.2     **Acceptance by an Impaired Class of Claims**.

4.2.1     Pursuant to section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if, after excluding any Claimant designated pursuant to section 1126(e) of the Bankruptcy Code, (a) Claimants holding at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept such Plan, and (b) more than one-half in number of such Allowed Claims actually voting in such Class have voted to accept the Plan.

4.2.2     Except for Claimants and Interest Holders in Classes that are deemed or presumed to have accepted or rejected this Plan pursuant to the terms of this Plan, if Claimants in a particular Impaired Class of Claims were given the opportunity to vote to accept or reject this Plan and notified that a failure of any Claimant in such Impaired Class of Claims to vote to accept or reject this Plan would result in such Impaired Class of Claims being deemed to have accepted this Plan, but no Claimant in such Impaired Class of Claims voted to accept or reject this Plan, then such Class of Claims shall be deemed to have accepted this Plan.

4.3     **Presumed Acceptances by Unimpaired Classes**.  Classes of Claims designated as Unimpaired are conclusively presumed to have voted to accept this Plan pursuant to section 1126(f) of the Bankruptcy Code, and the votes of such Claims will not be solicited.

4.4     **Presumed Rejection of the Plan**.  Impaired Classes of Claims or Interests that do not receive or retain property under the Plan are conclusively presumed to have voted to reject the

Plan pursuant to section 1126(g) of the Bankruptcy Code, and the votes of Claimants or Interest Holders in such Classes will not be solicited.

4.5     **Reservation of Rights**. Subject to <u>Section 13.11</u> of this Plan, the Lender reserves the right to modify or withdraw this Plan, in its entirety or in part, for any reason, including, without limitation, in the event that the Plan is not confirmed.

**ARTICLE 5**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

5.1     **Funding and Administration of Plan**.

    5.1.1     On a Distribution Date, the Lender shall pay the amounts to be paid to Claimants under the Plan.

    5.1.2     The Lender shall be the Disbursing Agent under the Plan without a bond and will generally administer and take all actions in furtherance of the Plan.

    5.1.3     On or promptly following the Effective Date, the Debtor shall execute and deliver the Assignment Documents to the Lender in a form satisfactory to the Lender.

    5.1.4     On the Effective Date, the Lender shall enter into the New Mortgage.

5.2     **Release of Liens**.  On the Effective Date and except as expressly set forth in this Plan, all mortgages, deeds of trust, Liens or other security interests or encumbrances against the Property shall be released and forever discharged.

5.3     **Property Transfer**.  On the Effective Date, the Debtor shall effect the Property Transfer and thereby transfer and convey directly to the Lender title to the Property, the Causes of Action (including but not limited to the Avoidance Actions), and the other Assets free and clear of all Claims, Liens, charges, interests and encumbrances, other than Permitted Exceptions, the New Mortgage, and governmental orders and violations of record applicable to the Properties and in effect

as of the Effective Date.  Any and all Liens, Claims, and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.

5.4    **Preservation of Insurance**.  This Plan shall not diminish or impair the enforceability of any insurance policy, right or claim that may cover Claims against the Debtor (including without limitation, the Debtor's Related Persons) or any other person or entity.  Likewise, this Plan and the Confirmation Order shall not impair any insurance carrier's rights, claims, defenses or disputes under any policy and shall not act to increase or extend any rights of the Debtor or the insurance carriers.

5.5    **Dissolution of Debtors**.  The Debtor's principals shall take all actions necessary to dissolve the Debtor in accordance with State law promptly following the Effective Date.

## ARTICLE 6

## CAUSES OF ACTION

6.1    The Debtor and, upon confirmation of this Plan and entry of the Confirmation Order, the Lender waive and release the right to pursue preference claims against non-Insiders under section 547 of the Bankruptcy Code.  All other Causes of Action are fully preserved and reserved.  All rights pursuant to section 502, 544, 545, and 546 of the Bankruptcy Code and all Avoidance Actions (except those brought against non-Insiders pursuant to section 547 of the Bankruptcy Code) shall be preserved, provided, however, that in connection with the Property Transfer, the Debtor shall transfer the Causes of Action, including the Avoidance Actions (other than those brought against non-Insiders under section 547 of the Bankruptcy Code), to the Lender.

## ARTICLE 7

### PROVISIONS GOVERNING DISTRIBUTIONS, RESOLUTION OF DISPUTED CLAIMS AND OBJECTIONS TO PROOFS OF CLAIM

7.1    **General**.  Unless a Claimant holding an Allowed Claim against the Debtor agrees to a different distribution date or except as otherwise provided herein or as ordered by the Bankruptcy Court, distributions to be made on account of Claims that are Allowed Claims shall be made on the applicable Distribution Date.  Any Claims that are Disputed Claims will be paid promptly after a Claim is deemed an Allowed Claim.

7.2    **Interest on Claims**.  Except as otherwise expressly provided for in this Plan, the Confirmation Order, other order of the Bankruptcy Court, or required by applicable bankruptcy law, interest accruing after the Petition Date shall not be paid on any Claims, and no Claimant shall be entitled to be paid interest accruing on or after the Petition Date on any Claim.

7.3    **Distribution Record Date**.  As of the close of business on the Distribution Record Date, the Claims register for each of the Classes of Claims as maintained by the Debtor, its agents or the Bankruptcy Court shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims. The Disbursing Agent shall not have any obligation to recognize any transfer of any Claims occurring on or after the Distribution Record Date.  The Disbursing Agent shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date.

7.4    **Delivery of Distributions and Undeliverable or Unclaimed Distributions**.

7.4.1    Delivery of Distributions in General.  Distributions on Allowed Claims shall be made at the addresses listed in the Schedules or on the Proofs of Claim filed in this Bankruptcy Case, as applicable.

7.4.2    <u>Undeliverable and Unclaimed Distributions</u>.

(a)    <u>General</u>.  If the distribution on any Allowed Claim is returned to the Disbursing Agent as undeliverable or is otherwise unclaimed, no further distributions shall be made on such Allowed Claim unless the Disbursing Agent is notified in writing within ninety (90) calendar days of the Distribution Date of the then-current address of the Claimant holding the Allowed Claim.

(b)    <u>Non-Negotiated Checks</u>.  Checks issued on account of Allowed Claims shall be null and void if not negotiated within ninety (90) calendar days from and after the date of issuance thereof.  Requests for reissuance of any check must be made directly and in writing to the Disbursing Agent by the Claimant of the relevant Allowed Claim within the 90-calendar-day period.  After such date, such Allowed Claim (and any claim for reissuance of the original check) shall be automatically discharged and forever barred, and such funds shall revert to the Lender, notwithstanding any federal or state escheat laws to the contrary.

7.5    **Withholding and Reporting Requirements**.  In connection with this Plan and all distributions hereunder, the Disbursing Agent shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Disbursing Agent shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.  All Claimants holding Allowed Claims shall be required to provide any information necessary to effect information reporting and the withholding of such taxes.  Notwithstanding any other provision of this Plan, (a) each Claimant holding an Allowed Claim that is to receive a distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including

income, withholding and other tax obligations, on account of such distribution and (b) no distribution shall be made to or on behalf of such Claimant's Allowed Claim pursuant to this Plan unless and until such Claimant has made arrangements satisfactory to the Disbursing Agent for the payment and satisfaction of such tax obligations.

7.6    **Objections to Claims**.  The Lender may file objections to Claims for a period of 90 days after the Effective Date, which date may be extended by Order of the Court on request of the Lender.  .  No partial distributions will be made with respect to a Disputed Claim or a Claim that is contingent or unliquidated.  To the extent that a Disputed Claim becomes an Allowed Claim, such Allowed Claims shall be paid promptly by the Lender.

7.7    **Disputed Claims**.  The Lender shall provide adequate assurance of payment of Disputed Claims in accordance with the terms of treatment of such Claims under the Plan as of the Effective Date and continuing until such time as such Disputed Claims are Allowed or Disallowed. Such adequate assurance of payment may be in the form of a segregated disputed claims reserves, guaranties from third parties, collateral, or other security in a form acceptable to the Bankruptcy Court.

## ARTICLE 8

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1    **Rejection of all Executory Contracts other than Tenant Leases**.   On the Effective Date, all Executory Contracts other than Tenant Leases and the CBA (as amended pursuant to the Stipulation of Settlement) will be deemed rejected in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract (i) was previously assumed or rejected by the Debtor pursuant to an order of the Bankruptcy Court, (ii) previously expired or terminated pursuant to its own terms or (iii) is an Executory Contract or unexpired lease that is included in a pending motion to assume such Executory Contract or

unexpired lease.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

8.2     **Claims Upon Rejection**.  In the event of a rejection of any Executory Contract which results in damage to the other party or parties to the Executory Contract, a Proof of Claim for such damages must be filed by the damaged party with the Bankruptcy Court within thirty (30) days after the Confirmation Date.  Any Allowed Claim arising from the rejection of any Executory Contract shall be treated as an Unsecured Claim.

8.3     **Failure to File**.  Any Claim arising from the rejection of any Executory Contract not filed with the Court within the time period provided in the preceding paragraph above shall be deemed forever barred and shall not be entitled to participate in any distribution under the Plan.

8.4     **Tenant Leases**.  The tenants under the Tenant Leases shall not have any continuing obligations to the Debtor following the assumption and assignment of the Tenant Leases to the Lender (or its designee) pursuant to the Property Transfer. The Lender (or its designee) shall assume all benefits and obligations of the Debtor as landlord under all assigned Tenant Leases from and after the Effective Date.

8.5     **SEIU Local 32 BJ Collective Bargaining Agreement**.  Pursuant to the CBA Order, the  Debtor assumed the CBA, as amended pursuant to the Stipulation of Settlement.  The CBA, as amended by the Stipulation of Settlement, is ratified for purposes of this Plan and shall be binding on the Lender upon the Effective Date.

## ARTICLE 9

## RELEASES AND EXCULPATION

9.1     **Exculpation**. To the fullest extent permitted under applicable law, as of and following the Effective Date, the Lender and its Related Persons (to the extent a claim arises from actions taken by such Related Person in its capacity as a Related Person of the Lender) shall not incur

any liability to any Person for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, including this Plan, pursuit of confirmation of any plans of reorganization or liquidation, including this Plan, the administration, consummation and implementation of the Plan or the property to be distributed under the Plan or the Disclosure Statement, except for claims related to any act or omission by the Lender or its Related Persons that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, gross negligence, or violation of any penal law.  In all respects, any of the Lender or its Related Persons shall be entitled to rely upon the advice of counsel and financial advisors with respect to their duties and responsibilities under, or in connection with, the Bankruptcy Case, the Plan, and the administration thereof.  Nothing herein shall prevent or prohibit the federal, state or local governments from enforcing their respective police and regulatory powers under applicable federal and state laws against the Lender, its Related Persons, and/or the Property.  For the avoidance of doubt, nothing contained in this section shall exculpate the Debtor, the Affiliated Property Managers, the Insider Contributors, the Interest Holders, and each of their Related Persons from liability resulting from conduct which occurred prior the Petition Date in connection with the operation and maintenance of the Property.

   9.2   **<u>Confirmation Injunction</u>**.  Other than such liabilities and obligations provided under the Plan, (a) the rights afforded herein and the treatment of all Claims and Interests herein shall be in exchange for and in complete satisfaction and release of all Claims and Interests of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, against the Debtor, the Lender, and any of their Related Persons or any of their assets and properties, (b) on the Distribution Date, all such Claims against the Debtor, the Lender, and each of their Related Persons shall be satisfied and released in full, and (c) all Persons shall be precluded from asserting and shall

be permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively, or otherwise) against the Debtor, the Lender, or any of their respective Related Persons or their assets or properties, including the Property and Assets, based upon any act or omission, transaction, or other activity of any kind or nature that occurred on or after the Petition Date but prior to the Effective Date; *provided*, <u>however</u>, that nothing in this <u>Section 9.2</u> shall enjoin or otherwise limit any claims against the Lender in respect of its obligations under this Plan. Nothing herein shall prevent or prohibit the federal, state or local governments from enforcing their respective police and regulatory powers under applicable federal and state laws.

9.3      **<u>Injunction Against Interference with Plan</u>**. Upon entry of the Confirmation Order, all holders of Claims against or Interests in the Debtor and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan; *provided*, that nothing herein or in the Confirmation Order shall preclude, limit, restrict or prohibit any party in interest from seeking to enforce the terms of the Plan, the Confirmation Order, or any other agreement or instrument entered into or effectuated in connection with the consummation of the Plan.

**ARTICLE 10**

**<u>CONFIRMATION AND CONSUMMATION OF THE PLAN</u>**

10.1      **<u>Condition to Confirmation</u>**.

10.1.1      The Bankruptcy Court shall have entered a Confirmation Order in form and substance satisfactory to the Lender.

10.2    **Conditions To Effective Date**.  This Plan shall not become effective and the Effective Date shall not occur unless and until the Lender is satisfied that:

(a) the Confirmation Order has become a Final Order;

(b) all documents and agreements necessary to implement this Plan on the Effective Date including the documents in respect of the Property Transfer shall have been executed and delivered in form and substance satisfactory to the Lender and all transactions and other actions required to be taken in connection with the Effective Date shall have occurred;

(c) the Debtor shall have delivered to the Lender all books and records including in respect of the Tenant Leases and the rent ledgers; and

(d) the Lender shall have obtained and closed on the New Mortgage for the Property.

10.3    **Waiver of Conditions**.  Each of the conditions set forth in Sections 10.1 and 10.2 of this Plan may be waived in whole or in part solely by the Lender without the need for notice or a hearing (other than any condition the waiver of which is proscribed by law).

10.4    **Consequence if Confirmation Order is Vacated**.  If the Confirmation Order is vacated, this Plan shall be null and void in all respects.

## ARTICLE 11

## EFFECT OF CONFIRMATION

11.1    **Binding Effect**.  Subject to the occurrence of the Effective Date, on and after the entry of the Confirmation Order, the provisions of this Plan shall bind every holder of a Claim against or Interest in the Debtor and inure to the benefit of and be binding on such holder's respective successors and assigns, regardless of whether the Claim or Interest of such holder is Impaired under this Plan and whether such holder has accepted this Plan.

11.2    **Transfer and Vesting of Assets**.  Upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all assets and property of the Debtor (including the Property, the Assets, and any rights thereunder)  shall be transferred to and vest in  the  Lender,  in accordance with Section 3.5 of this Plan, free  and  clear  of  all  Claims, Liens, charges, and other interests, except as otherwise provided herein.  Upon the Effective Date, the Lender may operate the Property and use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as otherwise provided herein.

## ARTICLE 12

## RETENTION OF JURISDICTION

12.1    **Retention of Jurisdiction**.  Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain exclusive jurisdiction over all matters arising under, arising in or out of, or relating to the Debtor's Bankruptcy Case and this Plan to the fullest extent permitted by law, including, but not limited to, among other things, jurisdiction to:

12.1.1    allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Expense Claim, the resolution of any objections to the allowance or priority of Claims;

12.1.2    resolve any matters related to the rejection of any Executory Contract and to hear, determine, and, if necessary, liquidate any Claims arising therefrom;

12.1.3    hear  and  determine  all  applications  for  compensation  and reimbursement of expenses of professionals under section 330, 331, 363, 503(b), 1103 and 1129(c)(9) of the Bankruptcy Code;

12.1.4    ensure that distributions to Claimants holding Allowed Claims are accomplished pursuant to the provisions of this Plan;

12.1.5    decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

12.1.6    enter such orders as may be necessary or appropriate to implement, enforce, or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

12.1.7    resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan or any contract, instrument, release or other agreement or document that is executed or created pursuant to this Plan, or any entity's rights arising from or obligations incurred in connection with this Plan or such documents;

12.1.8    consider any modification of the Plan under section 1127 of the Bankruptcy Code or approve any modification of the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with this Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with this Plan or the Confirmation Order, or enter any order in aid of the Confirmation Order pursuant to section 1142 of the Bankruptcy Code, in such manner as may be necessary or appropriate to consummate this Plan;

12.1.9    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of this Plan or the Confirmation Order;

12.1.10    hear and determine all Causes of Action (including but not limited to the Avoidance Actions) to the full extent permitted under 28 U.S.C. §1334 and 28 U.S.C. §157;

12.1.11    enter an order concluding and terminating the Bankruptcy Case;

12.1.12    enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Bankruptcy Case; and

12.1.13    hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code.

## ARTICLE 13

## <u>GENERAL PROVISIONS</u>

13.1    **<u>Headings</u>**.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the meaning of the Plan.

13.2    **<u>No Payment of Disputed Claims</u>**.  This Plan contemplates the payment of Allowed Claims only.  No Disputed Claims shall be paid, nor shall distributions be made to a Claimant holding a Disputed Claim, until such Disputed Claim, or any part thereof, becomes an Allowed Claim, if ever.

13.3    **<u>Exemption from Transfer Taxes</u>**.

(a)    Pursuant to section 1146(a) of the Bankruptcy Code: (i) the issuance, transfer, or exchange of notes or equity securities under this Plan; (ii) the creation of any mortgage, deed of trust, lien, pledge, or other security interest including the New Mortgage issued in connection with the Property Transfer; (iii) the making or assignment of any contract, lease or sublease; (iv) the making or delivery of any deed or other instrument of transfer or other consideration under, in the furtherance of, or in connection with this Plan, including, without

limitation, the Property Transfer, the Assignment Documents and any other payments and transfers pursuant to this Plan by the Debtor directly to the Lender; and (v) delivery of deeds, bills of sale, or other transfers of tangible property, are exempt from and will not be subject to any stamp tax, or other similar tax or any tax held to be a stamp tax or other similar tax by applicable law (including, but not limited to, any New York State Real Estate Transfer Tax imposed under Article 31 of the Tax Law, any New York State Mortgage Tax imposed under Article 11 of the Tax Law, any New York City Real Property Transfer Taxes under section 11-2102 of the New York City Administrative Code, any mortgage recording tax or any other tax within the purview of section 1146(a) of the Bankruptcy Code including with respect to the New Mortgage, and without the requirement of presentation of any affidavit or form with respect to any tax imposed under Article 31 of the Tax Law, any New York City Real Property Transfer Taxes under section 11-2102 of the New York City Administrative Code with respect to the transactions effectuated pursuant to this Plan).  For the avoidance of doubt, the Plan does not seek any such relief beyond the scope of section 1146(a) of the Bankruptcy Code.

(b)     All filing officers (including without limitation, the City Register and/or County Clerk of Bronx County, City of New York) shall be, and hereby are directed to: (i) accept for recording and record, any and all deeds and other documents which are presented to them for recording, including the Assignment Documents and the New Mortgage, immediately upon presentation thereof, with regard to the transactions effectuated pursuant to this Plan, without the payment of any New York State Real Estate Transfer Tax imposed under Article 31 of the Tax Law, any New York State Mortgage Tax imposed under Article 11 of the Tax Law, any New York City Real Property Transfer Taxes under section 11-2102 of the New York City Administrative Code, any mortgage recording tax or any other tax within the purview of section 1146(a) of the

Bankruptcy Code including with respect to the New Mortgage, and without the requirement of presentation of any affidavit or form with respect to any tax imposed under Article 31 of the Tax Law, any New York City Real Property Transfer Taxes under section 11-2102 of the New York City Administrative Code with respect to the transactions effectuated pursuant to this Plan; and (ii) except as otherwise provided in the Plan and the Confirmation Order, cancel and discharge of record all liens, encumbrances, claims and other adverse interests in or against the Properties and/or Assets.

(c)     The Property Transfer by the Debtor to the Lender and the accompanying recording of the New Mortgage shall be exempt from stamp tax or similar tax, including, but not limited to, the transfer taxes and mortgage recording tax referenced above pursuant to section 1146(a) of the Bankruptcy Code.

(d)     All governmental authorities and any other taxing authorities shall be permanently enjoined from the commencement or continuation of any action to collect from the Property, the Assets, the Lender, the New Mortgage Lender, or their respective Related Persons, any taxes from which the transactions effectuated pursuant to this Plan are exempt, pursuant to and in furtherance of section 1146(a) of the Bankruptcy Code, including but not limited to, New York State Real Estate Transfer Taxes, New York City Real Property Transfer Taxes, and applicable mortgage recording tax, and any penalties, interest, or additions to any tax related thereto.

(e)     The City Register and/or County Clerk of Bronx County office shall record the deed of each Property, and other similar conveyance documents required to be delivered under this Plan without the payment of any stamp tax, transfer tax, or similar tax, and without the

presentation of affidavits, instruments, or returns otherwise required for recording or filing pursuant to section 1146(a) of the Bankruptcy Code.

13.4     **Calculation of Time Periods**.  Bankruptcy Rule 9006 is incorporated herein for purposes of calculating the dates set forth herein.

13.5     **Other Actions**.  Nothing contained herein shall prevent the Lender from taking such actions as may be necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

13.6     **Severability of Plan Provisions**.  If any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, solely at the request of the Lender, will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration, or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

13.7     **Successors and Assigns**.  The rights, benefits and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, the Debtor, the Lender, the Claimants, the tenants under the Tenant Leases, the Interest Holders and all Related Persons of such Persons or Entities.

13.8    **Revocation, Withdrawal or Non-Consummation**.  The Lender reserves the right to revoke or withdraw its support for this Plan prior to the Confirmation Date and to file subsequent plans of liquidation or reorganization.  If the Lender revokes or withdraws this Plan, or if confirmation or consummation does not occur, then, with respect to the Lender, (a) the Plan shall be null and void in all respects and (b) nothing contained in the Plan (i) shall prejudice in any manner the rights of the Lender or (ii) constitute an admission of any sort by the Lender.

13.9    **Notice**.  To be effective, all notices required or permitted to be provided under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

Notice to the Debtor

975 Walton Bronx LLC
Attention: David L. Smith, Manager and Chief Restructuring Officer
1449 37th Street, Suite 608
Brooklyn, New York 11218

and

2 Charlton Street, Apartment 7-C
New York, New York 10014

with a copy to

Goldberg Weprin Finkel & Goldstein LLP
Attention: Kevin J. Nash
1501 Broadway, 22nd Floor
New York, New York 10036
Email: kjnash@gwulaw.com

*Counsel to the Debtor and Debtor-in-Possession*

and

<u>Notice to the Lender</u>

Walton Improvement Group LLC
c/o Chestnut Holdings of New York, Inc.
5676 Riverdale Avenue, Suite 307
Bronx, New York 10471
Attention:  Daniel Wiener
Telephone No.: (718) 543-8200 x332
Facsimile No.:  (718) 543-8600
E-mail:  DW@chestnutholdings.com

with a copy to

Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, New York 10019-9710
Telephone No.: (212) 836-8000
Facsimile No.: (212) 836-8689
Attention: Benjamin Mintz and Justin Imperato
Emails: benjamin.mintz@arnoldporter.com and justin.imperato@arnoldporter.com

*Counsel to the Lender*

13.10    **<u>Governing Law</u>**.  Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that a relevant document provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflicts of law of such jurisdiction.

13.11    **<u>Reservation of Rights</u>**.  Except as expressly set forth herein, this Plan shall have no force and effect unless the Bankruptcy Court has entered the Confirmation Order.  The filing of this Plan, any statement or provision contained in this Plan, or the taking of any action by the Lender in furtherance of seeking confirmation of this Plan shall not be and shall not be deemed to be an admission or waiver of any rights of the Lender with respect to the Claimants, Interest Holders or the Related Persons of such entities.

# ARTICLE 14

## MODIFICATIONS

14.1    **Modification of Plan**.  The Lender may seek amendments or modifications to the Plan in accordance with section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date, the Lender may seek to remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan.  A Claimant that has accepted this Plan shall be deemed to have accepted this Plan as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim.

# ARTICLE 15

## CLOSING THE CASE

15.1    Upon substantial consummation, the Lender may move for a final decree to close the Bankruptcy Case and to request such other orders as may be just.

Dated:    New York, New York
          October 10, 2022

WALTON IMPROVEMENT GROUP LLC, a
New York limited liability company


By:    */s/ Daniel Wiener*_____
       Name: Daniel Wiener
       Title: Authorized Signatory